1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CAROL VAUGHN, in her representative
capacity as Personal Representative of the
ESTATE OF MICHAEL COHEN,

                              Plaintiff
                              Counter Defendant
                              Third Party Defendant
                              Cross Defendant,

    v.

LOREN COHEN, et al.,

                              Defendants
                              Counter Plaintiffs

***

WILLIAM NEWCOMER,

                              Plaintiff
                              Counter Defendant,

    v.

LOREN COHEN, et al.,

                              Defendants
                              Counter Plaintiffs
                              Third Party Plaintiffs,

    v.

Case No. 3:23-cv-06142-TMC

ORDER ON DEFENDANT LOREN
COHEN'S MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS

1  AMARA COHEN, individually, and SUSAN
   COHEN, Trustee of the Michael Arthur
2  Cohen Spousal Equivalent Access Trust,
   CAROL VAUGHN, individually, and in her
3  representative capacity as Personal
   Representative of the ESTATE OF
4  MICHAEL COHEN, UNITED STATES OF
   AMERICA (DEPARTMENT OF
5  INTERNAL REVENUE), and BR
   NEWCOMER, LLC
6
                        Third Party Defendants
7                       Counter Defendants
                        Counter Plaintiffs.
8

## I.   INTRODUCTION

This action arises from a creditor dispute concerning the probate of the Estate of Michael Cohen. The case was removed to this Court by the United States of America after it was named as a Third Party Defendant in the state court action. Dkt. 1. Before the Court is Defendant Loren Cohen's Motion for Partial Judgment on the Pleadings. Dkt. 35. Having reviewed the parties' pleadings, briefs from Loren,[1] the Estate, Newcomer, and the United States (Dkt. 35, 38, 39, 40, 43), and the balance of the record, the Court GRANTS the motion in part and DENIES it in part. The Court also GRANTS the Estate leave to amend its claims.

## II.   BACKGROUND

Michael was a general contractor and property developer who owned numerous construction and real estate development business entities, including M&J Real Estate Investment, LLC. Dkt. 2-1 ¶¶ 1, 34–35. In 2014, Michael and his adult son, Loren, signed an agreement through which Michael sold 50.1 percent of his business interests to Loren's trust, the LMC Family Trust, for $11,310,000. *Id.* ¶ 2.

---

[1] Because multiple parties have the last name "Cohen," the Court refers to Michael and Loren Cohen by their first names.

ORDER ON DEFENDANT LOREN COHEN'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS - 2

Michael was diagnosed with esophageal cancer in early 2020 and died on December 6 of that year, after spending much of 2020 in the hospital for treatment. *Id.* ¶ 57–58. On August 30, 2020, while hospitalized, he signed another agreement with Loren. Dkt. 2-1 ¶ 3. They amended that agreement in October 2020 and signed the amended agreement in late November or early December, shortly before Michael died. *Id.* Although Michael was initially represented by counsel in the negotiations, that lawyer did not review the final agreement before Loren obtained Michael's signature. *Id.* ¶ 4. Rather, "as Michael grew sicker, Loren took over drafting, and procured Michael's signature on the transfer documents." *Id.*

The 2020 agreement and amended agreement (together, the "2020 Transaction") "modified the 2014 Sale to eliminate the cash payments due under that agreement." *Id.* ¶ 5. Specifically, "Michael agreed to accept $1,257,170.67 instead of the $8,485,000" Loren still owed Michael for the 2014 Sale, reducing the amount due by $7,227,829.33. *Id.* ¶ 120. Michael also transferred the remaining 49.9 percent of his business interests to Loren. *Id.* ¶ 121. In 2014, Michael and Loren valued those interests at $11,287,380, and in 2019, Michael valued his assets at $11,209,500 and his interest in M&J Real Estate Investment at $8,775,564. *Id.* ¶ 122. In exchange, Loren agreed to pay Michael an annual salary for the rest of his life—even though Michael was on his "deathbed" at the time of the agreement—as well as Michael's wife Amara's cell phone bill, health insurance coverage for Amara and Michael's minor children, indemnification of Michael, and $1,000,000 to Michael's other adult son, Lee. *Id.* ¶ 107. But "Loren has not made any payments under the 2020 Transaction to Michael, Michael's Estate, Michael's wife, or Michael's Trust." *Id.* ¶ 123. And health insurance coverage for Amara and Michael's children ceased when Michael died. *Id.* ¶ 124.

The 2020 Transaction "left Michael's Estate with insufficient assets to fund the spousal trust, pay Michael's creditors, pay the support award Michael's children are entitled to under

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

chapter 11.54 RCW, pay Estate administrative expenses, or pay the income tax due on the 2020 Transaction (now over $1.8 Million)." *Id.* ¶ 6; *see also id.* ¶¶ 125, 137–43.

On July 7, 2023, the Estate filed suit against Loren, his marital community, and his family trust in the Superior Court of the State of Washington for Pierce County. Dkt. 1-4. The Estate filed an amended complaint on October 18, 2023, Dkt. 2-1, and the action was later removed to this Court by Third Party Defendant the United States, Dkt. 1. The Estate claims in its amended complaint that the 2020 Transaction resulted from undue influence and violated the Uniform Voidable Transactions Act (UVTA), RCW 19.40 *et seq*. Dkt. 2-1. Having answered the Estate's amended complaint, Dkt. 57, Loren moves for partial judgment on the pleadings. Dkt. 35.

### III.    JURISDICTION

The Court has an independent obligation to determine whether it has subject matter jurisdiction. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). Although this case was initially filed in state court, the United States removed it to federal court under 28 U.S.C. § 1442(a)(1), the federal officer or agency removal statute, after "United States of America (Department of Internal Revenue)" was named as a Third Party Defendant. Dkt. 1. The United States also brought a crossclaim against the Estate and a counterclaim against Loren. Dkt. 18. Federal district courts have "original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue, or revenue from imports or tonnage except matters within the jurisdiction of the Court of International Trade." 28 U.S.C. § 1340; *see also* 26 U.S.C. § 7402. They also have original jurisdiction of all "civil actions, suits or proceedings commenced by the United States." 28 U.S.C. § 1345. The Court has supplemental jurisdiction over the remaining state-law claims. *See* 28 U.S.C. § 1367(a).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

### IV.   DISCUSSION

#### A.   Legal Standard

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."[2] The legal standard for Rule 12(c) is "substantially identical" to the standard for a motion to dismiss under Rule 12(b)(6) because under both rules, "a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy."[3] *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quotation marks and citation omitted).

As with a motion to dismiss, to survive a motion for judgment on the pleadings, the complaint "does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A] plaintiff's

---

[2] The Estate contends that because two Defendants, Susan and Amara Cohen, have not yet filed answers, a Rule 12(c) motion is premature. But a Rule 12(c) motion is proper because the Estate has not filed claims against Susan and Amara, and their answers have no bearing on this motion. *See Whitson v. Bumbo*, No. C 07-05597 MHP, 2009 WL 1515597, *4 (N.D. Cal. Apr. 16, 2009) (holding a court can consider a Rule 12(c) motion before *all* defendants have answered where the moving defendant filed an answer).

[3] Motions to dismiss and motions for judgment on the pleadings differ in only two respects: "(1) the timing (a motion for judgment on the pleadings is usually brought after an answer has been filed, whereas a motion to dismiss is typically brought before an answer is filed), and (2) the party bringing the motion (a motion to dismiss may be brought only by the party against whom the claim for relief is made, usually the defendant, whereas a motion for judgment on the pleadings may be brought by any party)." *Sprint Telephony PCS, L.P. v. County of San Diego*, 311 F. Supp. 2d 898, 902–03 (S.D. Cal. 2004), *opinion clarified sub nom. Sprint Tel. PCS, L.P. v. County of San Diego*, No. 03-CV-1398-K(LAB), 2004 WL 859333 (S.D. Cal. Jan. 23, 2004) (internal citation omitted).

1   obligation to provide the grounds of his entitlement to relief requires more than labels and

2   conclusions, and a formulaic recitation of the elements of a cause of action will not do."

3   *Twombly*, 550 U.S. at 555 (internal quotation marks omitted).

4   The Court "must accept as true all factual allegations in the complaint and draw all

5   reasonable inferences in favor of the nonmoving party." *Retail Prop. Tr. v. United Bhd. of*

6   *Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). But the Court is "not bound to

7   accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

8   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

9   statements, do not suffice." *Iqbal*, 556 U.S. at 678.

10   If a complaint is deficient, the Court must grant leave to amend, "even if no request to

11   amend the pleading was made, unless it determines that the pleading could not be cured by the

12   allegation of other facts." *Bacon v. Woodward*, 104 F.4th 744, 753 (9th Cir. 2024) (quoting

13   *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000)). This "policy is to be applied with extreme

14   liberality." *Id.* (quoting *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014)).

15   **B.   The Estate has pled plausible claims under the UVTA.**

16   Loren argues that the Estate's claims under the Uniform Voidable Transactions Act

17   (UVTA), RCW 19.40 *et seq*, fail regardless of whether the claims assert a theory of actual or

18   constructive fraud. Dkt. 35 at 21. Loren contends that the Estate fails to plead either theory

19   because it has not alleged that Vaughn, as Michael's personal representative, is a creditor. *Id.* at

20   22. He also argues that the Estate fails to allege the debtor element because the Estate alleges that

21   it was Loren, not Michael, who transferred Michael's assets. *Id.* at 23–24. Loren argues that the

22   Estate fails to plead actual fraud because it has not alleged that Michael intended to defraud his

23   creditors. *Id.* at 24–25. Loren also argues that the Estate fails to plead a claim for constructive

24

fraud under the UVTA because its allegations are conclusory recitations of the elements of constructive fraud. *Id.* at 25–26.

        *1.*        *The Estate can bring a fraudulent conveyance claim under the UVTA.*

        Loren argues that the Estate is not a creditor and thus cannot bring fraudulent conveyance claims under the UVTA. Dkt. 35 at 22–23. The Estate argues that a personal representative need not be a creditor of the Estate as defined by the probate code to have standing under the UVTA. Dkt. 40 at 9–10. To the contrary, the Estate contends, the personal representative is authorized and has a duty to bring UVTA claims under RCW 11.48.140. *Id.* at 7–9. The Estate also argues that the Probate Court has directed the Successor Personal Representative in this case (Vaughn) to pursue fraudulent conveyance claims under the UVTA. *Id.* at 7–8.

        RCW 11.48.140 authorizes an estate's personal representative to recover the decedent's fraudulent conveyances as follows:

> When there shall be a deficiency of assets in the hands of a personal representative, and when the deceased shall in his or her lifetime have conveyed any real estate, or any rights, or interest therein, with intent to defraud his or her creditors or to avoid any right, duty, or debt of any person, or shall have so conveyed such estate, which deeds or conveyances by law are void as against creditors, the personal representative may, and it shall be his or her duty to, commence and prosecute to final judgment any proper action for the recovery of the same, and may recover for the benefit of the creditors all such real estate so fraudulently conveyed, and may also, for the benefit of the creditors, sue and recover all goods, chattels, rights, and credits which may have been so fraudulently conveyed by the deceased in his or her lifetime, whatever may have been the manner of such fraudulent conveyance.

The Washington Supreme Court has held that this statute grants the personal representative not only the authority but the *exclusive* authority, absent certain exceptions, to bring an action to recover the estate's fraudulent conveyances. *Rummens v. Guar. Tr. Co.*, 199 Wash. 337, 346, 92 P.2d 228 (1939). "The reason for this rule," the court explained, "is that only by its observance can estates be promptly and properly settled and the rights of all creditors equally protected." *Id.*

at 344. And its effect "is to make the executor or administrator the statutory agent of the creditors for the purpose of maintaining the particular action for their benefit." *Id.*

RCW 11.48.140 does not expressly cite the UVTA. But that RCW 11.48.140 authorizes personal representatives to recover the decedent's fraudulent conveyances "for the benefit of creditors" is sufficient to determine that the personal representative has the status of a creditor for the purpose of pursuing a UVTA action. *See* RCW 11.48.140; *Rummens*, 199 Wash. at 344.

Although the Court is not aware of precedent beyond *Rummens* that squarely addresses whether RCW 11.48.140 authorizes personal representatives to stand as a creditor of the Estate in a UVTA suit, the Ninth Circuit has addressed a similar question in the context of equity receivers. In *Donell v. Kowell*, 533 F.3d 762, 776–77 (9th Cir. 2008), the Ninth Circuit held that a receiver of a defrauded corporation had standing as a "creditor" for UVTA claims, even though an equity receiver typically may sue only to redress injuries to the entities in receivership and not on behalf of creditors of the entity in receivership. The court adopted the Seventh Circuit's "colorful analysis" that while a fraudulent scheme was underway, "the corporations created by the scheme operator were 'robotic tools' of the operator." *Id.* at 777 (quoting *Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir. 1995)). But once that scheme collapsed, "the appointment of the receiver removed the wrongdoer from the scene," and "the corporations were no more the operator's evil zombies. Freed from his spell they became entitled to the return of the moneys— for the benefit not of the operator but of innocent investors—that the operator had made the corporations divert to unauthorized purposes." *Id.* (quoting *Scholes*, 56 F.3d at 754). Applying that reasoning, the Ninth Circuit concluded that the receiver in its case had standing because "although the losing investors will ultimately benefit from the asset recovery, the Receiver is in fact suing to redress injuries that [the defrauded corporation] suffered when its managers caused [the corporation] to commit waste and fraud." *Id.*

ORDER ON DEFENDANT LOREN COHEN'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS - 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Here, the Estate alleges that the 2020 Transaction was the product of a fraudulent scheme and that Michael was acting under Loren's influence when he signed those agreements. Dkt. 2-1 ¶¶ 108, 155, 183. Now free of Loren's influence, the Estate is effectively suing to redress injuries it suffered when Loren caused Michael to commit fraud. The Estate thus has standing to bring its UVTA claims to redress injuries suffered by the Estate for the benefit of the Estate's creditors under RCW 11.48.140, *Rummens*, and *Donnel.*

> 2. The Estate has pled the "debtor" element of the UVTA.

Loren next contends that the Estate's UVTA claims fail because Loren is not a debtor under the statute. Dkt. 35 at 24. The Estate responds that *Michael* is the debtor and asserts that the debtor need not be a party to the action. Dkt. 40 at 15. The Estate argues further that Loren, the transferee, is the proper defendant in its UVTA action. *Id.* at 14–15.

The UVTA provides that "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor . . . , if the debtor made the transfer or incurred the obligation [fraudulently]." RCW 19.40.041. RCW 19.40.011 defines a "creditor" as "a person that has a claim" and a "debtor" as "a person that is liable on a claim." "'Debt' means liability on a claim," and "'[c]laim,' except as used in 'claim for relief,' means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." RCW 19.40.011.

This language neither states nor implies that the "debtor" must be the defendant in a UVTA action. And the statute's authorization of remedies against the transferee shows that the recipient of the transferred assets is a proper defendant. *See* RCW 19.40.071(1)(b) (providing as a remedy for fraudulent transfer "[a]n attachment or other provisional remedy against the asset transferred or other property of the transferee if available under applicable law");

RCW 19.40.081(2)(a) ("The judgment may be entered against: (i) The first transferee of the asset or the person for whose benefit the transfer was made . . . .").

As the Estate argues, where the transferee has interest in the assets, and the transferor does not, the transferor need not be named in an action to recover the assets. *See In re Silverman*, 603 B.R. 498, 502 (Bankr. D.N.M. 2019) ("Case law makes clear that the transferor is not a necessary party to an avoidance action brought against the transferee if the transferor did not retain any interest in the transferred property."). Here, Loren has interest in the assets and Michael no longer does. Michael does not need to be a defendant in this action.

> 3.    *The Estate has not pled actual fraud under the UVTA.*

Loren argues that the Estate failed to plead actual intent to defraud Michael's creditors because it "alleges that it was *Loren* who intended to defraud or avoid Michael's creditors." Dkt. 35 at 25.

A transfer may be fraudulent under the UVTA "if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." RCW 19.40.041(1)(a). In determining actual intent, courts may consider, among other factors, whether:

> (1) The transfer or obligation was to an insider; (2) The debtor retained possession or control of the property transferred after the transfer; (3) The transfer or obligation was disclosed or concealed; (4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) The transfer was of substantially all the debtor's assets; (6) The debtor absconded; (7) The debtor removed or concealed assets; (8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

RCW 19.40.041(2).

Here, the amended complaint does not allege that Michael, the debtor, intended to defraud his creditors. Rather, it alleges that it was Loren, the transferee, who had the intent to defraud Michael's creditors as well as Michael himself. Dkt. 2-1 ¶ 155 ("While Loren was in a position of trust and confidence with the Decedent, Loren unduly influenced the Decedent to agree to transfer his business interests to Loren under terms that were favorable to Loren and unfavorable to Michael."); *id.* ¶ 108 ("If it had not been for Loren's direct influence, preparation of documents, and procurement of Michael's signature, neither [agreement] would have been completed or executed."); *id.* ¶ 183 ("Loren caused Michael's property to be transferred shortly before Michael's death with actual intent to hinder, delay, or defraud Michael's creditors."). Nowhere in the amended complaint does the Estate allege that *Michael* intended to defraud his creditors. Because the Estate pleads that Loren, not Michael, intended to defraud Michael's creditors, it has not pled actual fraud under RCW 19.40.041(2). Should the Estate wish to amend its pleading to allege that Michael intended to defraud his creditors it may do so no later than October 9, 2024.

> 4.    *The Estate has pled constructive fraud under the UVTA.*

Loren argues that the Estate has not pled facts supporting its claim for constructive fraud. Dkt. 35 at 25. A transfer may constitute constructive fraud with respect to claims arising *after* the transfer if the debtor made the transfer

> [w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor (i) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (ii) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

RCW 19.40.041(1)(b). When a creditor's claim arises *before* the transfer, a transfer constitutes constructive fraud "if the debtor made the transfer or incurred the obligation without receiving a

reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation" or "the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent." RCW 19.40.051.

The Estate claims the 2020 Transaction between Michael and Loren is voidable under the UVTA. Dkt. 2-1 ¶ 192. It alleges that Michael "reduced the amount that Loren owed Mich[a]el under the 2014 Sale by over $7,000,000" and transferred "substantially all of [his] assets" and "business interests" to Loren. *Id.* ¶¶ 120–21, 184, 188. It further alleges that the consideration Michael received in return—Loren's agreement to pay Michael's annual salary despite his near-death condition, Amara's cell phone bill, health insurance coverage for Amara and Michael's children, indemnification of Michael, and $1,000,000 to Lee—"was not reasonably equivalent to the value of the assets transferred to Loren." *Id.* ¶¶ 107, 190. And the Estate alleges that Loren has not made any payments under the 2020 Transaction to Michael or the Estate. *Id.* ¶ 123. The Estate has thus pled that Michael "made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer." RCW 19.40.041; RCW 19.40.051.

The Estate also alleges that as a result of the transaction, "Michael became insolvent" such that "his Estate is unable to pay creditors and the IRS." *Id.* ¶ 191. Specifically, it alleges that the transaction left Michael and his Estate with insufficient assets to pay claims by Michael's creditors, the income taxes generated by the 2020 Transaction, his minor children's support award, the trust he created for his wife Amara and their minor children, or the Estate's attorney's fees, guardian ad litem fees, and administrative costs. *Id.* ¶¶ 137–143, 125, 191. The Estate thus has alleged that Michael "became insolvent as a result of the transfer." RCW 19.40.051.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Finally, the Estate alleged that Loren was "an insider pursuant to RCW 19.40.011";[4] that "[b]efore the transfer was made, Michael had been sued or threatened with suit"; and that "Michael's death was imminent, and Loren knew that Michael's Estate might owe taxes." *Id.* ¶¶ 187, 190. He and Loren "reasonably should have believed that [Michael] would incur[] debts beyond [his] ability to pay as they became due" because of the transfer. RCW 19.40.041. The Estate thus has adequately pled a claim for constructive fraud with respect to debts incurred both before and after the 2020 Transaction.

**C.    The Estate has not pled undue influence but leave to amend is warranted.**

Loren argues that the Estate has not pled a claim for undue influence because it seeks money damages rather than rescission, which Loren contends is the only remedy available for undue influence. Dkt. 35 at 26–28. He does not challenge the merits of the claim at this stage. Washington state courts apply Section 177 of Restatement (Second) of Contracts to claims of undue influence in the context of contract formation. *In re Est. of Jones*, 170 Wash. App. 594, 606, 287 P.3d 610 (2012). Section 177 provides:

> (1) Undue influence is unfair persuasion of a party who is under the domination of the person exercising the persuasion or who by virtue of the relation between them is justified in assuming that that person will not act in a manner inconsistent with his welfare.
>
> (2) If a party's manifestation of assent is induced by undue influence by the other party, the contract is voidable by the victim.
>
> (3) If a party's manifestation of assent is induced by one who is not a party to the transaction, the contract is voidable by the victim unless the other party to the transaction in good faith and without reason to know of the undue influence either gives value or relies materially on the transaction.

---

[4] "A relative of the debtor or of a general partner of the debtor" is an "[i]nsider" under RCW 19.40.011(8).

Restatement (Second) of Contracts § 177. Undue influence is not "a free-standing cause of action," but rather, "a legal principle that sounds in contract law, upon which a court may void a transfer of property." *Matter of Est. of Kolesar*, 27 Wash. App. 2d 166, 181 n.13, 532 P.3d 170 (2023).

Neither party has cited Washington precedent in which a court has awarded money damages for undue influence. The proper remedy is to "void the transfer of property." *See id.* The Court thus dismisses the Estate's undue influence claims because the only remedy sought is not available as a matter of law. But because this deficiency is curable by amendment, the Court grants the Estate leave to amend its complaint to reassert the undue influence claims and seek rescission if it so chooses. *See Bacon*, 104 F.4th at 753. Should it wish to amend its pleading, the Estate must do so no later than October 9, 2024.

## V.   CONCLUSION

For the foregoing reasons the Court GRANTS in part and DENIES in part the motion for judgment on the pleadings (Dkt. 35) as follows:

- The Court GRANTS the motion as to the Estate's claim of actual fraud under the UVTA and undue influence. These claims are DISMISSED without prejudice. Should the Estate seek to allege that Michael intended to defraud his creditors or alter the remedy it seeks for undue influence, it may amend its pleading no later than October 9, 2024.

- The Court DENIES the motion as to the Estate's claim of constructive fraud under the UVTA.

Dated this 25th day of September, 2024.

Tiffany M. Cartwright
United States District Judge