1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CAROL S VAUGHN, et al., in her representative capacity as Personal Representative of the ESTATE OF MICHAEL COHEN, | Case No. 3:23-cv-06142-TMC<br><br>ORDER ON VAUGHN'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

                  Plaintiff
                  Counter Defendant
                  Third Party Defendant
                  Cross Defendant,

    v.

LOREN COHEN, et al.,

                  Defendants
                  Counter Plaintiffs

***
LOREN COHEN, et al.,

                  Defendants
                  Counter Plaintiffs
                  Third Party Plaintiffs,

    v.

AMARA COHEN, individually, and SUSAN COHEN, Trustee of the Michael Arthur Cohen Spousal Equivalent Access Trust, CAROL VAUGHN, individually, and in her representative capacity as Personal Representative of the ESTATE OF MICHAEL COHEN, UNITED STATES OF

AMERICA (DEPARTMENT OF
INTERNAL REVENUE), and BR
NEWCOMER, LLC

          Third Party Defendants
          Counter Defendants
          Counter Plaintiffs.

## I.  INTRODUCTION

This action arises from a creditor dispute concerning the Estate of Michael Cohen. The case was removed to this Court by the United States after it was named as a Third-Party Defendant in the state court action. Dkt. 1. Before the Court is Plaintiff Carol Vaughn's motion for partial summary judgment on Defendant Loren[1] Cohen and PC Collections LLC's ("PCC") crossclaims against Vaughn and the Estate. Dkt. 124. Loren and PCC responded, Dkt. 189, and Vaughn replied, Dkt. 200. The Court heard oral argument on March 14, 2025. Dkt. 227. Having reviewed the parties' briefing and the balance of the record, the Court GRANTS in part and DENIES in part the motion.

## II.  BACKGROUND

### A.  Factual Background

The following facts are based on the evidence in the record, viewed in the light most favorable to the nonmoving parties, as well as allegations in the pleadings that are undisputed.

On June 1, 2014, Michael and his adult son, Loren, signed an agreement through which Michael transferred a 50.1 percent interest in his company, M&J Real Estate Investment, LLC, to

---

[1] As with its prior orders in this case the Court refers to members of the Cohen family by their first names to avoid confusion.

Loren's trust, the LMC Family Trust. Dkt. 11-1 at 43–44. The 2014 agreement valued the 50.1% interest at $11,310,000. *Id.* at 44. The agreement provided that the Company (M&J) would grant Michael a "Preferred Return" equal to the value of the transferred interest. *Id.* Half the value of the Preferred Return, however, would be diluted over the course of ten years in exchange for Loren's executive management of the company. *Id.* The dilution amount was $565,500 per year.

In early 2020, Michael was diagnosed with esophageal cancer, and after several hospitalizations that year, he died on December 6, 2020. *Id.* at 679. In August 2020, while hospitalized, Michael signed another agreement with Loren, *id.* at 73–80, and signed an amendment to the agreement shortly before his death, *id.* at 82–86. The Court incorporates by reference its discussion of the undisputed facts surrounding the negotiation of those agreements from its order denying Loren's motion for summary judgment (Dkt. 239), while recognizing that in this motion, the Court must draw all inferences in Loren's favor rather than Vaughn's.

These two agreements—the 2020 agreement and amended agreement (together, the "2020 Transaction")—transferred Michael's remaining business interests to Loren. *Id.* at 74. The 2020 Transaction provided that any amount of the Preferred Return still owing to Michael would be gifted to the MAC Trust, a trust set up for Michael's wife Amara and his two minor children. *Id.* It provided that one of the companies controlled by Loren would hold one of its investments "as nominee on behalf of the MAC Trust." *Id.* at 74–75, 83. After stating that "the value of the Company has greatly declined since the making of the Original Transfer Agreement [in 2014]," the 2020 Transaction provided that in consideration for receiving the remaining business interests, Loren would guarantee that the companies "will pay any amount of Preferred Return still remaining due." *Id.* at 75. The agreement then calculated the "Remaining Preferred Return" from the 2014 Agreement as $1,257,170.67. *Id.* at 75, 83–84. As "additional consideration," the companies now controlled by Loren agreed "to indemnify MAC Trust and [Michael] from any

and all claims or liabilities arising from any business disputes related to [the companies],

including any and all personal guarantees of [Michael]"; continue paying Michael his salary and

benefits until he died; pay a $1,000,000 "bonus" to Michael's other adult son, Lee; and pay for

cell phone service and health insurance coverage for Amara and the two minor children for a

period of time. *Id*. at 84–85.

Following Michael's death on December 6, 2020, Loren petitioned the probate court to

be appointed the Personal Representative ("PR") of Michael's estate. *See generally* Dkt. 125-1.

In his petition, Loren stated he "does not know the nature and extent of Decedent's assets and

liabilities at this time," but "believes that Decedent's assets are likely in excess of any liabilities,

last illness, funeral expenses, burial expenses, monument expenses, taxes, and costs of

administration and believes the estate to be solvent." *Id.* at 3–6. The probate court appointed

Loren as the PR but did not grant Loren non-intervention powers as they were not requested.

Dkt. 126-1 at 3. As the PR, Loren published the Notice to Creditors on January 21, 2021, which

informed creditors:

> Any person having a claim against Decedent must, prior to the time the claim would
> be barred by any otherwise applicable statute of limitations, present the claim in the
> manner as provided in RCW 11.40.070 by serving on or mailing to the Personal
> Representative or the Personal Representative's attorney at the address stated
> below, a copy of the claim and filing the original of the claim with the Court. The
> claim must be presented within the later of: (1) thirty days after the Personal
> Representative served or mailed the notice to the creditor as provided under RCW
> 1 1.40.020(3); or (2) four months after the date of first publication of the notice. If
> the claim is not presented within this time frame, the claim is forever barred,
> except as otherwise provided in section 11 of this Act and RCW 11.40.060.

Dkt. 125-2 at 2.

From February 21, 2021 to August 30, 2021, eight creditors—Bank of America, William

Newcomer, the Thomsens, Julie McBride, Alaska USA Federal Credit Union, Peoples Bank,

Wells Fargo Bank, and Hanmi Bank—filed claims in the probate court for a total of

$26,666,127.90. Dkt. 125-2, 125-3, 125-4, 125-5, 125-6, 125-7, 125-8, 125-9, 125-10. Loren later filed Michael's 2020 income tax return on October 15, 2021, which reported Michael owed $1,456,754 in taxes. Dkt. 125-14 at 3.

During this time, Loren settled claims in ongoing litigation with the Thomsens and agreed to entry of an $8,000,000 covenant judgment against the Estate. Dkt. 125-11; Dkt. 125-12 at 3. In his notice of the settlement to the probate court, Loren represented that "while the settlement agreement results in a technical judgment against the Estate, the settlement will not result in any estate assets being used to pay said judgment." Dkt. 125-11 at 2. On June 11, 2021, the superior court in the *Thomsen* litigation granted Loren's motion to approve the settlement, finding the $8,000,000 covenant judgment to be fair and reasonable. Dkt. 125-13.

In December 2021, creditor William Newcomer moved to remove Loren as PR and a hearing was held before the probate court. Dkt. 126-2. Newcomer argued that RCW 11.48.140 requires a PR to investigate and pursue claims to seek recovery of assets for the benefit of the estate and creditors, but since Loren had received a potentially voidable transfer, there was a conflict of interest that required Loren's removal. *Id.* at 6. The probate court agreed and granted Newcomer's motion. *Id.* at 31; Dkt. 126-3. The court clarified that it was not making any finding of misconduct by Loren. Dkt. 126-2 at 30. But, since there were enough facts to raise the question of a fraudulent conveyance, Loren's role as PR "was an untenable position" because it presented "an inherent conflict of interest." *Id.* at 31. The court also found that any family member would still have an inherent conflict of interest, though to a lesser degree, and ordered the parties to present the court with neutral third-party candidates. *Id.* at 32–33. The probate court appointed Vaughn, a neutral third party, as successor PR on January 21, 2022. Dkt. 126-4. Loren appealed his removal as PR and Vaughn's appointment as successor; both decisions were affirmed on appeal. *See Cohen*, 26 Wn. App. 2d 1037 (2023).

After appointing Vaughn as successor PR, the probate court ordered her to "conduct an investigation into the status of the Estate assets, income and liabilities" and to "file a report with the Court stating whether assets of the Decedent and/or the Estate have been misappropriated, wasted, or fraudulently conveyed, whether tax returns have been filed, and whether any taxes are owed." Dkt. 126-4 at 5. The order required that the Report "include a recommendation as to whether litigation to recover assets of the Decedent or the Estate should be commenced" and authorized Vaughn "to engage in discovery under the Civil Rules of Procedure as she deems necessary to identify and marshal the assets of the Estate." *Id.*

On March 30, 2022, PC Collections (controlled by Loren) filed a creditor's claim against the Estate for $7,129.875.81. Dkt. 125-18. In 2015 and 2018, Newcomer had obtained two judgments against Michael for $4,060,987.46 and $136,006, *see id.* at 7–8, and later assigned them to PCC as part of a settlement agreement. *Id.* at 2–3. The claim stated that on January 14, 2022, PCC foreclosed on real property (the "D Street Property") owned by Michael. *Id.* at 3. After deducting the D Street Property's sale price of $275,000, PCC claimed it was owed $7,128,875.81, which included a twelve percent post-judgment interest that had continued to accrue. *Id.*

After Vaughn was appointed as successor PR, she retained counsel for probate, maritime, and tax issues to respond to Peoples Bank's seizure of Michael's yacht *Dame de la Mer*, to address the IRS claims, and to locate and marshal assets in Mexico. Dkt. 126 at 3. Vaughn also continued to investigate the 2020 Transaction and filed regular reports to the probate court. *Id.*

On May 27, 2022, the probate court approved Vaughn's First Report. *See* Dkt. 190-2; Dkt. 126-5 at 6. Based on its review of the record, the probate court also found that the Estate was insolvent and extended the deadline to file the Report on Vaughn's investigation of claims against Loren to September 1, 2022. Dkt. 126-5 at 5. The probate court also found that Loren had

not complied with its previous orders to provide an accounting of the Estate's income, expenses, and disbursements. *Id.* at 3.

On September 23, 2022, the probate court approved Vaughn's Second Report and her actions to date. Dkt. 126-6 at 5. The court also denied Loren's motion for Rule 11 sanctions against Vaughn, which claimed that Vaughn had presented "false factual allegations" and "groundless recommendations for claims" in the Second Report. Dkt. 126-7; Dkt. 190-5 at 22.

On January 13, 2023, the probate court approved Vaughn's Third Report and her actions to date. Dkt. 126-8 at 4. The court considered the record, which included Vaughn's Third Report, declarations, and Newcomer and Loren's response to the Third Report. *Id.* at 2–3. The court concluded it "finds there is sufficient evidence to authorize the Estate to file claims against Loren Cohen under Washington's Uniform Voidable Transactions Act . . . and for misappropriation of assets based upon Loren Cohen's failure to establish that he paid fair market value for assets." *Id.* at 3. This issue, however, was reserved until Vaughn presented to the probate court with a plan to finance the litigation. *Id.*

On March 31, 2023, the probate court denied Vaughn's petition to sell the cause of action based on evidence that Newcomer and Loren had reached a conditional agreement that neither would purchase the claim. Dkt. 126-9 at 3. Since Newcomer's report indicated that Newcomer and Loren, the "only reasonably interested buyers," had agreed among themselves not to purchase the Estate's claim, the probate court concluded the petition was moot. *Id.*; *see* Dkt. 190-10 at 52. The court, however, reiterated that it found "sufficient evidence of the statutory factors outlined in the PR's Third Report to authorize the filing" of a claim under RCW 19.40. Dkt. 126-9 at 3; *see* Dkt. 190-10 at 53–54. It also directed further briefing on Vaughn's request for authority to file other claims arising out of the 2020 Transaction. *Id.*; *see* Dkt. 190-10 at 57.

On May 5, 2023, the probate court held a hearing with all parties to determine "whether to authorize the filing of claims for breach [of] fiduciary duties and undue influence against Loren Cohen, in addition to the claim under RCW 11.19.40 authorized by the Court's March 31st order." Dkt. 126-10 at 7. At that hearing, Loren's counsel presented many of the same arguments that form the basis for Loren's breach of fiduciary duty claims against Vaughn in this lawsuit. Dkt. 126-10 at 10–22. Loren's counsel argued:

- That Vaughn had "fabricated" allegations that Loren had unduly influenced Michael in the 2020 Transaction, *id.* at 11;

- That Vaughn had not spoken with Michael's estate planning attorney, *id.* at 11–12;

- That Michael's will confirmed it was his intent for his business interests to be transferred to Loren, and that Vaughn had "completely abdicated" her "duty to honor the decedent's intent" by investigating Loren, *id.* at 12;

- That Vaughn had not given sufficient weight to declarations produced by Loren from others who knew Michael, attesting that Michael was in control of his estate planning and was not unduly influenced, *id.* at 13;

- That Vaughn had not sufficiently valued the indemnity provisions of the 2020 Transaction, or the payments Loren had made to settle litigation involving Michael, *id.* at 14;

- That Vaughn had not independently assessed the value of the business interests transferred to Loren, *id.* at 14–15;

- And that Vaughn had breached and "utterly failed" her duty to be fair and impartial to the beneficiaries of the Estate, including Loren, *id.* at 15.

During her argument, Loren's counsel remarked:

I have never, in more than a decade of litigating these cases, seen such—what I think is such an outrageous scenario as this one, in which the Court has authorized a fiduciary duty to investigate a decedent . . . and then that fiduciary used the documents provided in that investigation against a beneficiary who was never a target of that investigation in the first place, by cherry-picking the, quote/unquote, evidence. . . . I truly cannot imagine another PR who was not so biased against Loren Cohen[.]

*Id.* at 15. At that point, the probate court interjected and reprimanded Loren's counsel. *Id.* at 15–19. The judge observed that the facts surrounding potential claims against Michael and Loren arising from the 2020 Transaction were "intertwined," and to the extent Vaughn's investigation of whether Michael had fraudulently conveyed assets revealed "a prima facie claim . . . on behalf of the estate against a beneficiary," it is her role to bring it to the probate court to determine what to do with that asset of the estate. *Id.* at 15–16. The judge told Loren's counsel that her repeated, serious allegations against Vaughn had been unwarranted and unproductive: "[T]his does not present as a position of strength on your part . . . that you have repeatedly attacked Ms. Vaughn, who, in my opinion, is doing a service to this Court by acting as the successor personal representative. . . . I've had a chance, I think, to observe the parties in action here over the course of a year, and I have only seen professional conduct on the part of Ms. Vaughn." *Id.* at 18–19. The judge closed by informing the parties that the "[n]ext time that Ms. Vaughn is accused of unethical behavior, I'm going to set a hearing on my Friday afternoon docket, in person, in my courtroom, and somebody is going to be sanctioned at the end of the hearing." *Id.* at 19.

After hearing arguments from all parties, the court concluded, "[t]he elements of a breach of fiduciary duty are met here, at least at a prima facie level" because Vaughn "has presented facts that would support a claim that Loren paid something under the fair market value." *Id.* at 31–32. The court further found, "as to undue influence . . . I do think they again, establish a prima facie claim." *Id.* at 32. The court noted, "[i]n the ensuing litigation that I am approving here, it's very possible that Loren Cohen's narrative will prevail. It's well-taken. I think it's a legitimate position in litigation. But at this stage, it does not erase the presence of prima facie claims belonging to the estate, which need to be handled in a timely manner." *Id.* at 34. The court thus granted Vaughn leave to pursue claims of breach of fiduciary duty and undue influence in addition to claims under RCW 11.19.40. Dkt. 126-11 at 3. Vaughn was also authorized to

produce documents in response to the summons issued by the IRS, which included documents Loren had marked as "confidential" in discovery. *Id.*

On July 21, 2023, the probate court approved Vaughn's Fourth Report and her actions during the period from December 1, 2022 through June 30, 2023. Dkt. 126-13 at 3. One month later, the court granted Vaughn's motion to confirm authority to litigate claims. Dkt. 126-13. The court explained that Vaughn had been "previously authorized to file and litigate claims against Loren," but now Vaughn is further authorized "to file and litigate claims against Loren Cohen in his individual capacity, his representative capacity, his capacity as Trustee of the LMC Family Tryst, and the marital community of Loren and Holland Cohen." *Id.* at 2–3.

On January 19, 2024, the probate court again approved Vaughn's Eighth Report and her actions during the period from July 1, 2023 to December 31, 2023. Dkt. 126-14 at 2. The court noted that the crossclaims and counterclaims filed against Vaughn in the state and federal courts did not disqualify her from continuing to represent the Estate's interest as PR in the pending litigation or probate. *Id.* at 3. Specifically, the court concluded that it was in the best interests of the Estate for Vaughn to continue representing the Estate, and "[h]aving been made aware of the conflict of interest created by the filing of claims against [Vaughn] in her individual capacity in the pending litigation, the Court has reviewed the conflict of interest and hereby affirms and ratifies the authority granted to [Vaughn] under prior orders of the Court to represent the interests of the Estate in the pending litigation." *Id.* at 4.

Finally, on July 26, 2024, the probate court approved Vaughn's Ninth Report and her actions during the period from January 1, 2024 to June 30, 2024. Dkt. 126-15 at 2. As with the prior orders, the court approved fees Vaughn paid to retain outside counsel as well as her own PR fees. *Id.* at 2–3. The court also noted that "[Vaughn] is authorized but not required to investigate, negotiate, and assert any claims that the Estate may have to assets located in Mexico

that the Decedent had an interest in at the time of his death, including the asset identified in the previously filed Estate Inventory and Memorandum of Understanding signed by Loren Cohen." *Id.* at 3.

## B.  Procedural Background

The Estate sued Loren, his marital community, and his family trust in Pierce County Superior Court on July 7, 2023. *See* Dkt. 1-4 at 3. The Estate alleged that Loren had exercised undue influence over Michael, breached his fiduciary duty to obtain the transferred assets, and that the 2020 Transaction was voidable under the Uniform Voidable Transfer Act ("UVTA"). *See generally* Dkt. 2-1. On August 25, 2023, Newcomer also sued Loren. His action was consolidated with the Estate's suit against Loren before the consolidated action was removed to this Court by the United States. Dkt. 1; Dkt. 1-4 at 4.

Loren filed an amended answer to Newcomer's complaint which contained counterclaims and third-party claims against Newcomer, Vaughn, Sue Cohen, and the Estate. Dkt 65. In the amended answer, Loren and PCC claim that Vaughn breached her fiduciary duty as PR and that the Estate and Sue violated the Washington State Securities Act ("WSSA"). *Id.* at 14–19.[2] Loren and PCC also seek declaratory judgment "related to estate assets, lien/payment priority and entitlement to equitable subrogation brought by [PCC] and Loren Cohen against all parties to the dispute." *Id.* at 12. Specifically, Loren seeks a declaration that "certain business transactions at issue in this case is valid and enforceable," but if the transactions are declared invalid, Loren seeks the "remedy of equitable subrogation for payments he or his companies made to third-party creditors after the purchase of Mike Cohen's business interests that were debts personal to Mike Cohen." *Id.* at 13–14. Lastly, PCC seeks a declaration that "it is entitled to recover first in

---

[2] Loren's counterclaims for breach of fiduciary duty against Vaughn are also asserted in his answer to the Estate's third amended complaint. Dkt. 118 at 72–73.

1  priority in the event any assets of value or any money are recovered from Loren Cohen in this

2  case." *Id.* at 13.

3      On December 23, 2024, the Estate moved for partial summary judgment, arguing that

   Loren's breach of fiduciary duty claims against Vaughn fail because they violate full faith and

4

5  credit, *Rooker-Feldman,* and Washington probate law. *See generally* Dkt. 124. The Estate also

6  contends that Loren and PCC's creditor claims are barred by Washington's Nonclaim Statute,

7  RCW 11.40.051, and judicial estoppel. *See id.* The motion for partial summary judgment is fully

8  briefed and ripe for the Court's consideration.

9              **III.    SUMMARY JUDGMENT STANDARD**

10     "The court shall grant summary judgment if the movant shows that there is no genuine

11 dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

12 Civ. P. 56(a). A dispute as to a material fact is genuine "if the evidence is such that a reasonable

13 jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281

14 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

15 (1986)). The moving party has the initial burden of "'showing'—that is, pointing out to the

16 district court—that there is an absence of evidence to support the nonmoving party's case."

17 *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

18     If the moving party meets its initial burden, the nonmoving party must go beyond the

19 pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*,

20 477 U.S. at 248. The moving party is entitled to judgment as a matter of law when the

21 nonmoving party fails to make a sufficient showing on an essential element of a claim in the case

22 on which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323.

23

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

# IV.    DISCUSSION

## A.    No dispute of material fact exists as to whether Vaughn breached her fiduciary duty as PR.

The Estate argues that the Full Faith and Credit Act, 28 U.S.C. § 1738, and the *Rooker-Feldman* doctrine preclude the Court from relitigating a dispute on which the state court has issued a final judgment. Dkt. 124 at 20. The Estate asserts that Loren reraises the same allegations brought in probate court—that Vaughn had breached her fiduciary duty as PR by failing to carry out Michael's intent, to not waste estate asserts, and to act impartially by accusing Loren of unduly influencing his father. *Id.*; *see* Dkt. 65 at 14–15. However, the probate court approved all of Vaughn's reports and actions to date and authorized Vaughn to bring claims against Loren. Dkt. 124 at 21; *see* Dkt. 126-5, 126-6, 126-8, 126-9, 126-11, 126-13, 126-14, 126-15. And the Estate asserts, "[a]n interim order entered during probate, after notice of the hearing, is final in its nature, and cannot be attacked to relitigated at the hearing upon the final report, except upon a showing of extrinsic fraud." Dkt. 124 at 21. Thus, the Estate argues that allowing parties to contest the merits of a state court decision approving Vaughn's actions would violate the Full Faith and Credit Act and the *Rooker-Feldman* doctrine. Dkt. 124 at 21.

The Federal Full Faith and Credit Statute, 28 U.S.C. § 1738, "obliges federal courts to give the same preclusive effect to a state-court judgment as would the courts of the State rendering the judgment." *McDonald v. City of W. Branch*, 466 U.S. 284, 287 (1984). "This Act requires federal courts to apply the *res judicata* rules of a particular state to judgments issued by courts of that state." *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988) (citation omitted). In Washington state, "[a] party seeking to apply res judicata must establish four elements as between a prior action and a subsequent challenged action: concurrence of identity . . . (1) of subject-matter; (2) of cause of action; (3) of persons and parties; and (4) in the

quality of the persons for or against whom the claim is made." *Weaver v. City of Everett*, 194 Wn. 2d 464, 480, 450 P.3d 177, 185 (2019) (quoting *N. Pac. Ry. Co. v. Snohomish County*, 101 Wn. 686, 688, 172 P. 878 (1918)). The Washington Supreme Court has held that "the same subject matter is not necessarily implicated in cases involving the same facts." *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 866, 93 P.3d 108 (2004) (citations omitted).

Similarly, the *Rooker-Feldman* doctrine precludes federal courts from hearing direct or *de facto* appeals of state court judgments. *Fowler v. Guerin*, 899 F.3d 1112, 1119 (9th Cir. 2018); *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012) ("The doctrine bars a district court from exercising jurisdiction not only over an action explicitly styled as a direct appeal, but also over the 'de facto equivalent' of such an appeal.") (citation omitted). But the Supreme Court has also emphasized that the "ground occupied by *Rooker-Feldman*" is "narrow." *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The *Rooker-Feldman* doctrine does not apply to plaintiffs bringing independent claims that are "similar or even identical to issues aired in state court" but "not the subject of a previous judgment by the state court." *Cooper*, 704 F.3d at 778 (citations omitted).

Here, the relevant state court orders are interlocutory orders approving Vaughn's reports and her actions during the period covered by the report. *See* Dkt. 126-5, 126-6, 126-8, 126-9, 126-11, 126-13, 126-14, 126-15. It is true that the probate court authorized Vaughn to take the actions requested in her reports and that it rejected accusations of misconduct against Vaughn during a hearing. *See id.*; *see also* Dkt. 126-10 at 16–19. However, the probate court never issued a final judgment on the merits of whether Vaughn had breached her fiduciary duty. *See Weaver v. City of Everett*, 194 Wn.2d 464, 480, 450 P.3d 177 (2019) ("Res judicata precludes relitigation of an entire claim when a prior proceeding involving the same parties and issues culminated in a judgment on the merits.") (citations omitted); *see also Seattle-First Nat. Bank v. Kawachi*, 91

Wn.2d 223, 226, 588 P.2d 725 (1978) ("A judgment is res judicata as to every question which was properly a part of the matter in controversy, but it does not bar litigation of claims which were not in fact adjudicated."). Without a state court adjudication on the breach of fiduciary duty claim, this Court's review of Vaughn's alleged breach of that duty is not precluded by the Full Faith and Credit Act or the *Rooker-Feldman* doctrine.

Still, Loren has failed to provide evidence that creates a genuine dispute of material fact as to whether Vaughn had breached her fiduciary duty as PR. "The personal representative stands in a fiduciary relationship to those beneficially interested in the estate. He is obligated to exercise the utmost good faith and diligence in administering the estate in the best interests of the heirs." *Matter of Est. of Larson*, 103 Wn.2d 517, 521 (1985). The personal representative must "utilize the skill, judgment, and diligence which would be employed by the ordinarily cautious and prudent person in the management of his own trust affairs." *Hesthagen v. Harby*, 78 Wn.2d 934, 942 (1971). The personal representative also has a duty to collect debts due to the deceased and recover a decedent's fraudulent conveyances. RCW 11.48.010.

Loren's arguments for why Vaughn has breached her fiduciary duty consists mostly of rehashing the arguments that he made to the probate court in his response briefs to Vaughn's reports. *See* Dkt. 190-6 at 13. Specifically, Loren argues that "a fact finder could find that Vaughn committed waste when she incurred fees and costs pursing claims to recover assets with negative value while failing to pursue millions of dollars in assets in Mexico." Dkt. 189 at 25. But Vaughn did in fact retain counsel to pursue assets in Mexico, and importantly, the probate court ordered that Vaughn was "authorized but not required to investigate, negotiate, and assert any claims that the Estate may have to assets located in Mexico that the Decedent had an interest in at the time of his death." Dkt. 126 at 3; Dkt. 126-15 at 3. And this Court has already concluded that there are material factual disputes surrounding the value of the assets Vaughn seeks to

recover in this litigation. Dkt. 239. Loren thus fails to show evidence from which a reasonable factfinder could conclude Vaughn's actions regarding the Mexico assets constituted waste.

Loren then argues that Vaughn did not carry out Michael's intent and failed to act impartially by omitting facts and cherry-picking evidence to accuse Loren of undue influence. Dkt. 189 at 26. Loren contends that Vaughn "left out emails that showed the involvement of both Mike and his attorney" in the 2020 Transaction and "actively tried to undue [Mike's] business succession planning." *Id.* This is the same argument that Loren made in response to Vaughn's Third Report. *See* Dkt. 190-6 at 19 ("Loren provided evidence from numerous witnesses who testified that Decedent's intent was rooted in estate planning after receiving an incurable cancer diagnosis . . . Decedent worked closely with his attorney and financial planner to consummate the sale of his business interests to Loren, which had historically been his legacy."). But no reasonable factfinder could conclude that Vaughn's presentation of evidence created a "misimpression that Loren pushed Mike into the transfer agreement." Dkt. 189 at 12.

In fact, probate court records show that the court was well aware of the different positions Vaughn and Loren took when it allowed Vaughn to pursue this litigation. *See generally* Dkt. 126-10; Dkt. 126-11. Before authorizing Vaughn to bring the breach of fiduciary duty, undue influence, and UVTA claims, the probate court considered the entire record and held oral arguments. *See id.* The record included not only Vaughn's report but also Loren's response to Vaughn's findings and his accompanying exhibits. Dkt. 126-11 at 3. Loren's counsel raised to the probate court the same allegations against Vaughn she raises here. For example, counsel informed the probate court during oral arguments, "[e]very time [Loren] has put forth information before the Court, the Successor PR has not given weight to it. She has not given weight to a single piece of evidence that he has produced." Dkt. 126-10 at 13.

1
2
3
4
5
6

After hearing from all parties, the probate court acknowledged, "[t]here's a dispute over whether the transfer of the remainder of the LLC was breach causing damage to the decedent. That largely hinges on a factual dispute over the fair market value of the asset. I think both sides have pointed to different facts to support widely different values for the asset." *Id.* at 31–32. Even so, the court reasoned, "[t]hat sort of actual dispute, I don't think, necessarily negates a prima facie showing here." *Id.* at 32. As for the other claims, the probate court noted,

7
8
9
10

> I think the factors from Dean are helpful, and I do think they, again, establish a prima facie claim. . . . under those circumstances, I think it raises a presumption of undue influence and a shift in the burden of production to Loren. And then what's left, I think, is a very fact-intensive inquiry that does not lend itself well to any decision as a matter of law. . . . Many of the perspectives that Ms. McEntee addressed in her statements to the Court. The intent of Michael in handing over the rest of the LLC, and whether that was in keeping with an ongoing plan, or whether it was a pressured decision, given his diagnosis.

11

*Id.* at 32–33.

12
13
14
15
16
17
18
19
20
21
22
23
24

Even more importantly, this Court has now reviewed all the evidence that Loren claims Vaughn "cherry-picked" from and failed to adequately consider, and the Court has concluded that there *is* sufficient evidence for a factfinder to rule in favor of the Estate on all three claims: violations of the UVTA, undue influence, and breach of fiduciary duty. Dkt. 239. For Loren to prevail on his claims against Vaughn, he would have to present sufficient evidence to prove that she had breached her fiduciary duty by pursuing claims that (1) the probate court approved, and (2) the presiding judge determined were supported by sufficient evidence to proceed to trial. Loren has cited no authority, and the Court is not aware of any, that supports a finding of breach of fiduciary duty in similar circumstances. To the contrary, the most relevant authority the Court could find suggests that a personal representative has reasonable grounds to initiate litigation on behalf of an estate, and litigation expenses are reasonably incurred, so long as the claims are "not frivolous" and "not without legal support." *In re Est. of Wegner v. Tesche*, 157 Wn. App. 554,

1  563–64, 237 P.3d 387 (2010). Nor can the report from Loren's retained expert, Susan Gary—

2  which consists almost entirely of subjective opinions on questions of law that are reserved for the

3  Court—create a genuine dispute of material fact where the underlying evidence does not. *See*

4  *Aguilar v. Int'l Longshoremen's Union Loc. No. 10*, 966 F.2d 443, 447 (9th Cir. 1992)

5  ("[M]atters of law for the court's determination . . . are inappropriate subjects of expert

6  testimony.").

7          Moreover, the Court observes from review of the docket that most of the contested

8  motions practice in this litigation—and the fees incurred for that motions practice—has been

9  driven by Loren, not by Vaughn. *See, e.g.*, Dkt. 21 (unsuccessful order for partial summary

10  judgment); Dkt. 35 (partially successful motion for judgment on the pleadings); Dkt. 46

11  (unsuccessful motion for partial summary judgment); Dkt. 85 (partially successful motion to

12  strike); Dkt. 109 (unsuccessful motion to strike); Dkt. 131 (unsuccessful motion to strike);

13  Dkt. 135, 139, 140 (three unsuccessful *Daubert* motions); Dkt. 142 (unsuccessful motion for

14  summary judgment); Dkt. 217 (pending motion to disqualify Carol Vaughn). Loren's decision to

15  file these unsuccessful counterclaims against Vaughn also significantly increased the complexity

16  and expense of the litigation.

17          Loren has presented no evidence from which a reasonable factfinder could conclude that

18  Vaughn has done anything besides fulfill her duty as court-appointed, neutral PR. *See generally*

19  Dkt. 189; Dkt. 190. Accordingly, the motion for summary judgment on Loren's claims for

20  breach of fiduciary duty against Vaughn is GRANTED.

21  **B.    Washington Nonclaim Statute**

22          In Washington state, the nonclaim statute establishes a time limit for creditors to bring

23  claims against an estate. *See* RCW 11.40.051. It provides:

24

(1) Whether or not notice is provided under RCW 11.40.020, a person having a claim against the decedent is forever barred from making a claim or commencing an action against the decedent, if the claim or action is not already barred by an otherwise applicable statute of limitations, unless the creditor presents the claim in the manner provided in RCW 11.40.070 within the following time limitations:

(a) If the personal representative provided notice under RCW 11.40.020 and the creditor was given actual notice as provided in RCW 11.40.020(1)(c), the creditor must present the claim within the later of: (i) Thirty days after the personal representative's service or mailing of notice to the creditor; and (ii) four months after the date of first publication of the notice[.]

(b) If the personal representative provided notice under RCW 11.40.020 and the creditor was not given actual notice as provided in RCW 11.40.020(1)(c) . . .

(ii) [And if] the creditor was reasonably ascertainable, as defined in RCW 11.40.040, the creditor must present the claim within twenty-four months after the decedent's date of death[.]

RCW 11.40.051(1).

The nonclaim statute "encompasses every species of liability a personal representative can be called upon to pay out of the estate's general funds." *In Est. of Earls*, 164 Wn. App. 447, 448, 262 P.3d 832 (2011). "This includes claims arising out of obligations that the decedent incurred during his or her lifetime but are not due at the time of the decedent's death or at the expiration of the creditor's claims filing period." *Id.*

Washington courts have found the "meaning of [RCW 11.40] plain on its face." *In re Est. of Henington*, 182 Wn. App. 534, 538, 331 P.3d 112 (2014) ("A creditor must [] follow the claims procedures established in chapter 11.40 RCW or be forever barred from making a claim or commencing an action against the decedent."). "A creditor who is given actual notice as provided in RCW 11.40.020(c) must present the claim within 30 days of the personal representative's service or mailing of the notice, or within 4 months of first publication of the notice, whichever is later." *Washington Fed. Sav. v. Klein*, 177 Wn. App. 22, 24, 311 P.3d 53 (2013) (citing RCW 11.40.051(1)(a)). But "[i]f the creditor is not given actual notice despite

being reasonably ascertainable, the creditor has 24 months from the decedent's date of death to present the claim." *Id.* at 24–25 (citing RCW 11.40.051(1)(b)(ii)).

       1.     *PCC's creditor claim is barred because it was not timely filed.*

Vaughn moves for summary judgment on Loren and PCC's crossclaims for declaratory judgment asserting that PCC is entitled to recover first in priority certain assets of the estate. *See* Dkt. 65 at Sec. III.D. Vaughn argues that PCC's creditor claim against the Estate is barred because it was not timely filed. The Court agrees.

The Estate argues that PCC had actual notice of the Notice to Creditors because Loren was the PR who had signed and published it on January 21, 2021. Dkt. 124 at 6, 15; *see* Dkt. 125-2 at 2. And because Loren was "the sole member, registered agent, and the manager of PCC," PCC by extension had actual notice about the deadline by which a creditor was required to bring a claim. Dkt. 124 at 6. Given that Loren and PCC had actual notice, the Estate asserts that PCC had to file a creditor claim within four months after the notice was first published, as required under RCW 11.40.051(1)(a). *Id.* at 15; *see* Dkt. 125-2 at 2. However, PCC filed its creditor claim on March 30, 2022—ten months after the statutory deadline of May 21, 2021 had passed. Dkt. 125-18. Because PCC did not timely file its creditor claim, the Estate concludes, it is forever barred from bringing it. Dkt. 124 at 15–16.

The Estate further contends that because the deadline to file creditor claims passed before Vaughn was appointed PR, her appointment did not restart the clock. Dkt. 124 at 17. The Estate cites to *Gilkes v. Beezer*, 4 Wn. App. 761, 767, 484 P.2d 493 (1971) to support its argument. Dkt. 124 at 17. In *Gilkes,* the PR had published the Notice to Creditors but was later replaced by a successor PR. *Id.* at 762. The plaintiff creditor filed a claim that was defective and untimely. *Id.* The Washington Court of Appeals ruled in favor of the successor PR, reasoning that the "time for filing claims pursuant to published notice to creditors had expired prior to the appointment of

the defendant as administrator with will annexed," and therefore "the defendant was under no duty to republish notice to creditors so as to permit plaintiff to file a new creditor's claim complying with the statutory requirements." *Id.* at 767–68 (cleaned up).

Lastly, the Estate argues that PCC's creditor claim is not exempt from the nonclaim statute. Dkt. 124 at 16. Generally, "[a] judgment must be presented in the manner provided in RCW 11.40.070, but if the judgment is a lien on any property of the decedent, the property may be sold for the satisfaction of the judgment and the officer making the sale shall account to the personal representative for any surplus." RCW 11.40.130. In other words, a "creditor may foreclose on its collateral without filing a claim and engaging in the estate administration process." *In re Est. of Patton*, 1 Wn. App. 2d 342, 350, 405 P.3d 205 (2017). Here, the Estate asserts that PCC's claim is based on Newcomer's judgment, which PCC acknowledges was only "*partially* secured by the D Street Property." Dkt. 124 at 16; Dkt. 125-18 at 3 (emphasis added). Since that property was already foreclosed, and the "remainder of the claim is liquidated and currently due," the Estate argues RCW 11.40.130 does not apply and PCC must comply with probate procedures. Dkt. 124 at 16–17; Dkt. 125-18 at 3.

Loren makes several arguments in response. First, Loren contends that he complied with the nonclaim statute by filing a creditor claim within twenty-four months as he was a "reasonably ascertainable" creditor. Dkt. 189 at 18–20. Second, Loren argues that Vaughn's failure to publish notice of her appointment extended the period for filing all creditor claims to twenty-four months. *Id.* at 20–21. Third, Loren asserts that PCC is a secured creditor with a charging order and therefore need not present a claim against the Estate to foreclose on its charging order. *Id.* at 22–25.

These arguments are unpersuasive. To start, the fact that PCC was a reasonably ascertainable creditor has no bearing here because PCC had actual notice. RCW 11.40.051(1)(a)

provides that if the "creditor was given actual notice . . . the creditor must present the claim within the later of: (i) Thirty days after the personal representative's service or mailing of notice to the creditor; and (ii) four months after the date of first publication of the notice[.]" PCC argues that it did not have actual notice because Loren did not separately serve the notice on the registered agent of PCC (himself) or mail the notice to his last known address as required under RCW 11.40.020(1)(c). Dkt. 189 at 19. This argument fails. Loren, the sole manager and registered agent of PCC, *was* the PR who signed and published the Notice to Creditors. *See* Dkt. 125-2 at 2. If this Court adopted PCC's logic, it would allow the Personal Representative to exempt his own claims from the timeliness requirements of the nonclaim statute by choosing not to serve himself. *See Nagle v. Snohomish Cnty.*, 129 Wn. App. 703, 717, 119 P.3d 914 (2005) (finding that it "strains credulity" to believe that person who signed a real estate contract did not have actual notice of it).

By the time Vaughn was appointed as successor PR, the four-month period to file a creditor claim had passed for creditors, like PCC, who had actual notice. *See* Dkt. 125-18; RCW 11.40.051(1)(a). But PCC argues that since Vaughn did not publish a notice of the vacancy and succession under RCW 11.40.150, the period to file claims was extended to twenty-four months. Dkt. 189 at 21. While there has been no caselaw interpreting RCW 11.40.150 since its 1997 amendment, the plain language does not support PCC's rendition. RCW 11.40.150 states only, "The time between the . . . removal and . . . the mailing of the notice of vacancy and succession must be added to the time within which a claim must be presented . . . This section does not extend the twenty-four-month self-executing bar under RCW 11.40.051." PCC's argument might succeed if Vaughn was appointed during the window for PCC to file a claim. But nothing in the statute tolls the filing deadline, or allows PCC a second bite at the apple, when

PCC's claim was untimely long before Loren was even removed as PR. *See* Dkt. 125-2 at 2; Dkt. 126-3; RCW 11.40.051(1).

Finally, PCC's creditor claim seeks repayment on Newcomer's judgment which PCC acknowledges was only partially secured by the D Street Property. *See* Dkt. 125-18 at 3. Even before filing the claim, PCC has already foreclosed on the D Street Property and deducted the sale price of $275,000 from the claim amount. *Id.* Since the remainder of the claim is unsecured, PCC is not a secured creditor. *See id.* Therefore, PCC cannot benefit from RCW 11.40.130, which allows only secured creditors to foreclose on their collateral without engaging in the probate process. *See In re Est. of Patton*, 1 Wn. App. 2d at 349–50 (holding the nonclaim statute does "not impact the right of a creditor to realize on its security"). PCC's claim against the Estate is not exempt from the nonclaim statute and since it was not timely filed, the claim is barred.

For the reasoned provided above, the Estate's motion for summary judgment on PCC's crossclaims for declaratory judgment arising from the validity or priority of PCC's creditor claim against the Estate is GRANTED.

   2.   *Loren's WSSA claim is governed by the nonclaim statute and barred for untimely filing.*

The scope of Washington's nonclaim statute is broad. It includes "claims arising out of obligations that the decedent incurred during his or her lifetime but are not due at the time of the decedent's death or at the expiration of the creditor's claims filing period." *In Est. of Earls*, 164 Wn. App. at 448. Loren argues that the WSSA claim is a defense to the 2020 Transaction that he is entitled to pursue outside of probate court. Dkt. 189 at 22. The Estate asserts that Loren had to bring his WSSA claim in probate court because even "contingent" and uncertain claims are subject to the nonclaim act's deadlines. Dkt. 124 at 17–18.

The Washington Court of Appeals' decision in *Earls* is instructive. There, decedent Stephen Earls was president of the Stephen Earls Corporation, and the company entered a ten-year lease for the Seattle Design Center. *Id.* at 449. Earls signed a personal guaranty which allowed the lessor, Hines REIT Seattle Design Center, LLC, to seek damages from Earl without proceeding against the company and it also provided that in the event of Earls' death, the guaranty would bind Earls' estate. *Id.* Earls died in October 2008 and the estate's PR published a notice to creditors and sent the notice to Hines by certified mail. *Id.* at 450. The four-month period for filing a creditor's claim expired in February 2009 and Hines did not file or present a claim by the deadline. *Id.* at 449–50. But in August 2009, the company partially defaulted on its lease and Hines filed a petition to enforce the personal guaranty. *Id.* at 450. Earls' estate argued that Hines' petition was barred because it had failed to timely file a creditor's claim. *Id.* The superior court agreed and dismissed Hines' petition. *Id.*

Hines appealed and the Court of Appeals affirmed, concluding that "well-settled authority from the Washington Supreme Court" obligated Hines to comply with the nonclaim statute even if the decedent's obligation did not arise until after the claims filing period had passed. *Id.* at 451. The court cited *James v. Corvin*, 184 Wash. 356, 51 P.2d 689 (1935), in which a tenant entered a five-year lease with the lessors but died less than one year into the lease. *Id.* The tenant's estate gave proper notice to the creditors and the PR continued to pay rent for two years but then stopped. *Id.* The lessors never filed a creditor's claim but sued for unpaid rent and damages for breach of contract. *Id.* The Washington Supreme Court reasoned, "[t]he claim for damages for the unexpired portion of the lease is not an obligation incurred by the administratrix in the course of her administration of the estate. It arises out of a contractual obligation incurred by [the tenant] and is governed by the statute of nonclaim." *Id.* at 451–52 (quoting *James*, 184 Wash. at 359). Applying this reasoning, the court determined that Hines' claim to enforce Earls'

personal guaranty was similarly subject to the nonclaim statute and barred since the filing period had passed. *Id.* at 458.

Here, Loren raises a WSSA crossclaim against the Estate "in connection with the 2020 Sale, in that various material misrepresentations or omissions were made that had the effect of operating as a scheme or artifice to deceive or defraud." Dkt. 65 at 18. Like the lease in *Earls*, the 2020 Transaction was an agreement between Loren and Michael that was established during the decedent's lifetime. *See* Dkt. 11-1 at 273–77. Even though Loren asserts that he "did not discover the misrepresentations and omissions until recently," because the WSSA claim arises out of a contractual obligation incurred by Michael before he died, it is governed by the nonclaim statute. Dkt. 65 at 18; *see Earls*, 164 Wn. App. at 455 (holding that the nonclaim statute applies to all claims, "whether due, to become due, or contingent."). Loren brought the WSSA claim in a pleading filed on August 8, 2024—more than three years after the period to file a creditor's claim expired. *See generally* Dkt. 65. Since Loren did not timely raise the WSSA claim in probate court, he is barred from raising it here. The motion for summary judgment as to Loren's WSSA claim against the Estate is thus GRANTED.

> 3. *Loren's equitable subrogation and indemnity defenses are not governed by the nonclaim statute.*

Unlike Loren's WSSA claim, his claims for equitable subrogation and indemnification are equitable remedies that Loren may pursue outside of probate. These are defenses that Loren raised in his amended answers to both Newcomer's complaint, *see* Dkt. 65 at 13–14, and the Estate's third amended complaint, *see* Dkt. 172 at 71.

"Equitable subrogation is a remedy designed to prevent unjust enrichment." *Lynch v. Deaconess Med. Ctr.*, 113 Wn.2d 162, 166, 776 P.2d 681 (1989) (citations omitted); *see Jones v. Peabody*, 182 Wash. 148, 153, 45 P.2d 915 (1935) ("[E]quitable subrogation will be applied by

courts of equity in all cases where good conscience and equity indicate that a debt paid by one under any sort of legal compulsion ought to be paid by another.") (citations omitted). Similarly, "indemnity is an equitable action and is not based on contract or tort, although either may secondarily be involved, but on one party paying more than its fair share." *Cent. Washington Refrigeration, Inc. v. Barbee*, 133 Wn.2d 509, 517 n.12, 946 P.2d 760 (1997) (cleaned up).

Under the UVTA, a creditor may seek to void a fraudulent transfer, but a creditor can recover judgment for the value of the asset transferred, as adjusted under RCW 19.40.081(c). RCW 19.40.071(a)(1); RCW 19.40.081. The Washington Supreme Court has held that RCW 19.40.081(c) "allows for adjustment of the value of the asset transferred 'as the equities may require.'" *Thompson v. Hanson*, 168 Wn.2d 738, 749–50, 239 P.3d 537 (2009). "The statutory provision protecting good faith transferees from outsized judgments operates [n]otwithstanding voidability of a transfer and entitles a good faith transferee to [a] reduction in the amount of the liability on the judgment up to the value given the debtor for the transfer or obligation." *Id.* at 750 (cleaned up).

Unlike the WSSA claim which seeks damages from the Estate based on Michael's alleged wrongdoing, *see* Dkt. 65 at 17, subrogation and indemnity defenses are equitable remedies that may apply when a transaction is voided for undue influence or fraud. *See Lynch*, 113 Wn.2d at 166; *Cent. Washington Refrigeration, Inc.*, 133 Wn.2d at 517; RCW 19.40.081(c). These defenses are grounded in common law and the UVTA, and if the Estate prevails on its claims, Loren may still raise them. *See id.*

The Estate argues that judicial estoppel prevents Loren from raising subrogation and indemnity defenses. Dkt. 124 at 18. Loren represented to the probate court that no estate assets would be used to pay the *Thomsen* judgment. *Id.* But if the Court allows Loren to pursue these defenses, the Estate argues Loren will use them to hold the Estate liable for the *Thomsen*

judgment. *Id.* at 19. Loren responds that he settled the *Thomsen* litigation in reliance on the 2020 Transaction's indemnity provisions. Dkt. 189 at 24. If the Transaction is voided, Loren asserts that he is entitled to restitution for payments made. *Id.* The Court believes this issue should be reserved for trial. "Restitution is discretionary with the court" but "the complaining party may receive restitution for all benefits conferred on the other party, restoring both parties to economic *status quo ante.*" *Ogden Martin Sys., Inc. v. San Bernardino Cnty.*, Cal., 932 F.2d 1284, 1287 (9th Cir. 1991).

Loren's claims for equitable subrogation and indemnity fall outside the scope of the nonclaim act and are not barred by judicial estoppel. Accordingly, the motion for summary judgment on these claims is DENIED.

## V.    CONCLUSION

For these reasons, the Court ORDERS as follows:

- The Estate's Partial Motion for Summary Judgment is GRANTED as to the breach of fiduciary duty claims against Carol Vaughn. These claims are DISMISSED WITH PREJUDICE.

- The Estate's Partial Motion for Summary Judgment is GRANTED as to PCC's claims for declaratory judgment against the Estate arising from its creditor claim. These claims are DISMISSED WITH PREJUDICE.

- The Estate's Partial Motion for Summary Judgment is GRANTED as to Loren WSSA claim against the Estate. This claim is DISMISSED WITH PREJUDICE.

- The Estate's Partial Motion for Summary Judgment is DENIED as to Loren's equitable subrogation and indemnity defenses.

Dated this 26th day of March, 2025.

Tiffany M. Cartwright
United States District Judge