1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CAROL VAUGHN, in her representative
capacity as Personal Representative of the
ESTATE OF MICHAEL COHEN,

Plaintiff
Counter Defendant
Third Party Defendant
Cross Defendant,

v.

LOREN COHEN, et al.,

Defendants
Counter Plaintiffs

***

LOREN COHEN, et al.,

Defendants
Counter Plaintiffs
Third Party Plaintiffs,

v.

AMARA COHEN, individually, and SUSAN
COHEN, Trustee of the Michael Arthur
Cohen Spousal Equivalent Access Trust,
CAROL VAUGHN, individually, and in her
representative capacity as Personal
Representative of the ESTATE OF
MICHAEL COHEN, UNITED STATES OF

Case No. 3:23-cv-06142-TMC

ORDER ON MOTIONS IN LIMINE

AMERICA (DEPARTMENT OF
INTERNAL REVENUE), and BR
NEWCOMER, LLC

Third Party Defendants
Counter Defendants
Counter Plaintiffs.

Before the Court are Plaintiff Carol Vaughn's and Defendant Loren Cohen's motions in limine (Dkt. 232, 234). The Court has considered the parties' briefs. The motions are ripe for the Court's decision.

## I.    BACKGROUND

Plaintiff Carol Vaughn, in her capacity as Personal Representative of the Estate of Michael Cohen, brings claims against Loren[1] based on undue influence, breach of fiduciary duty, and violations of the Uniform Voidable Transactions Act ("UVTA"). Both parties filed their motions in limine on March 31, 2025. Dkt. 232, 234. Both parties responded to the other's motions. Dkt. 257, 261. Third-Party Defendants Amara Cohen and Susan Cohen also responded to Loren's motion in limine. Dkt. 259. Certain motions are stipulated to by the parties while others are disputed. The Court addresses each motion in turn.

## II.    DISCUSSION

### A.    Legal Standard

"A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n.4 (9th Cir. 2013) (quoting *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009)).

---

[1] As with its prior orders in this case the Court refers to members of the Cohen family by their first names to avoid confusion.

"To exclude evidence on a motion in limine the evidence must be inadmissible on all potential grounds." *Goodman v. Las Vegas Metro. Police Dep't,* 963 F. Supp. 2d 1036, 1047 (D. Nev. 2013), aff'd in part, rev'd in part, dismissed in part, 613 F. App'x 610 (9th Cir. 2015) (internal quotations omitted). "[I]f not, the evidentiary ruling is better deferred until trial, to allow for questions of foundation, relevancy, and prejudice to be resolved with the appropriate context." *Romero v. Washington*, No. 2:20-cv-01027-TL, 2023 WL 6458871, at *1 (W.D. Wash. Oct. 4, 2023) (citation omitted).

In ruling on motions in limine, courts do not "resolve factual disputes or weigh evidence." *United States v. Meech*, 487 F. Supp. 3d 946, 952 (D. Mont. 2020) (internal quotations and citation omitted). The inquiry is discretionary. *See United States v. Layton*, 767 F.2d 549, 554 (9th Cir. 1985).

**B.    The Estate's Motions in Limine**

> ***1.    Motion in Limine 1: Exclude any direct or indirect testimony about Loren's transactions with Michael or about any statements made by Michael to Loren or in Loren's presence.***

The Estate first requests that the Court prohibit Loren from "testify[ing] about any transaction with Michael, or any statements made by Michael to Loren or in Loren's presence." Dkt. 234 at 4. The parties agree that RCW 5.60.030, Washington's "Deadman Statute," applies to this case, but dispute how the law is applied. *Id.* at 3. The Estate argues that Loren is a "party in interest" under the Deadman Statute because he "stands to gain or lose by operation of the Plaintiff's case" but Vaughn is not because "she has no personal stake in the outcome of this matter." *Id.* at 3–4. The Estate argues that Loren should be prohibited from "offering self-interested testimony about the Company and its transfer to Loren." *Id.* at 5.

In his response, Loren agrees that he is a party in interest to certain contested transactions with Michael but argues that he cannot be precluded from testifying about anything relating to

the Company. Dkt. 257 at 2. Loren asserts that there "are many facets of the Company, and Loren may have relevant testimony on any number of things that would not violate the Deadman's Statute." *Id.* Next, Loren disagrees with Vaughn's assertion that she has no personal stake in this case. *Id.* at 3. However, since it is undisputed that Vaughn lacks personal knowledge about Michael's statements and transactions, Loren maintains that "any testimony she attempts to give on those topics may be precluded for other reasons" and the "Court should rule on objections as they rise." *Id.*

Washington's Deadman Statute provides:

[I]n an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased person . . . then a party in interest or to the record, shall not be admitted to testify in his or her own behalf as to any transaction had by him or her with, or any statement made to him or her, or in his or her presence, by any such deceased, incompetent or disabled person[.]

RCW 5.60.030. "The purpose of the dead man's statute is to prevent interested parties from giving self-serving testimony about conversations or transactions with the deceased." *In re Est. of Miller*, 134 Wn. App. 885, 889, 143 P.3d 315 (2006). A "party in interest" is someone "who stands to gain or lose by the operation of the action or judgment in question." *Id.* "The test to determine whether the testimony concerns a transaction covered by the statute is whether the deceased, if living, could contradict the witness of his own knowledge." *Kellar v. Est. of Kellar*, 172 Wn. App. 562, 574, 291 P.3d 906 (2012) (citation omitted). "Therefore, to constitute a transaction, the testimony must indicate that the decedent was both present and directly involved in the matter at hand." *Est. of Lennon v. Lennon*, 108 Wn. App. 167, 178, 29 P.3d 1258 (2001), *as amended on denial of reconsideration* (Oct. 2, 2001).

"Moreover, a party cannot testify indirectly to create an inference as to what did or did not transpire between the party and the deceased." *In re Est. of Miller*, 134 Wn. App. at 891. "This is not, however, to say that an interested party cannot testify at all" since "an interested

party can testify as to her own acts." *Kellar*, 172 Wn. App. at 574 (citation omitted). Similarly, "an interested party may testify as to her own feelings or impressions, so long as they do not concern a specific transaction or reveal a statement made by the decedent." *Id.* at 574–75 (citation omitted). While documentary evidence is not barred, testimony "regarding the intended meaning of those documents may, however, be prohibited." *Id.* at 575 (citation omitted).

"The [Deadman Statute] may be waived when the protected party introduces evidence concerning a transaction with the deceased." *Est. of Lennon*, 108 Wn. App. at 175. "Once the protected party has opened the door, the interested party is entitled to rebuttal." *Id.* "A waiver by introduction of testimony about one transaction does not extend to unrelated transactions and conversations." *Id.*

A ruling on this motion is premature given that the Estate may elect to waive the protections of the Deadman Statute for all or some contested transactions at trial. *See In re Est. of Johnson*, 173 Wn. App. 1028 (2013) (affirming the trial court's decision to defer ruling on the admission of evidence based on the Deadman Statute). The Court will consider objections based on the Deadman Statute as they arise, based on the principles set forth above. For these reasons, the motion is DENIED without prejudice.

> **2.** *Motion in Limine 2: Exclude all argument, testimony, or comment that Vaughn breached any fiduciary duty.*

The Estate next requests that the Court prohibit Loren from arguing that Vaughn breached any fiduciary duty. Dkt. 234 at 7. Since the Court granted Vaughn's motion for partial summary judgment and dismissed the claims against her, Loren states that he will not argue that Vaughn breached her fiduciary duties. Dkt. 257 at 3. The Court has already granted summary judgment on Loren's breach of fiduciary duty claims against Vaughn. Dkt. 240. The motion is thus DENIED as moot.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

     **3.**     *Motion in Limine 3: Exclude any evidence that disputes issues decided by Washington courts.*

     The Estate moves to exclude evidence that "contradicts the probate court orders or orders from other Washington courts." Dkt. 234 at 8. For example, the Estate asks the Court to prohibit Loren "from asserting that the probate court erred in approving the reports of the PR or arguing that he should not have been removed from his position as PR." *Id.*

     Loren responds that the Estate's request is overly broad. Dkt. 257 at 3. Loren maintains that he does not intend to make any argument that the probate court erred in approving Vaughn's reports or that he should not have been removed as PR. *Id.* Loren contends that the Estate does not identify the specific testimony or evidence it seeks to exclude because it is unclear which court orders the Estate is referencing or what it means by "contradict." *Id.* Since Loren does not know what evidence or testimony the Estate seeks to exclude, he argues that the Court should deny the motion. *Id.*

     The Court agrees with Loren that this motion is too broad and vague for a pretrial ruling. The Court will consider objections as they arise at trial. As the Court noted in its prior order, the relevant state court decisions are interlocutory and do not necessarily have preclusive effect. Dkt. 240 at 14. This motion is DENIED without prejudice.

     **4.**     *Motion in Limine 4: Exclude all argument, reference, or comment on Vaughn's communications with attorney Bruce Moen.*

     The Estate asks that the Court prohibit Loren from "examin[ing] Ms. Vaughn regarding attorney-client communications that are privileged and confidential under Washington statute." Dkt. 234 at 9. In response, Loren requests that the Court defer ruling on this motion in limine until specific issues are raised at trial because while he does not intend to invade Vaughn's attorney client privilege with Bruce Moen, Loren argues that he "must be able to ask questions that elicit factual information." Dkt. 257 at 4.

1    "The purpose of the attorney-client privilege is to protect every person's right to confide

2    in counsel free from apprehension of disclosure of confidential communications." *United States*

3    *v. Hardy*, No. 316CR00006MMDVPC, 2017 WL 11463113, at *1 (D. Nev. Sept. 1, 2017)

4    (quoting *In re Grand Jury Subpoena (Osterhoudt)*, 722 F.2d 591, 593 (9th Cir. 1983)). "The

5    attorney-client privilege protects confidential disclosures made by a client to an attorney in order

6    to obtain legal advice, . . . as well as an attorney's advice in response to such disclosures."

7    *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (citation omitted). "Because it

8    impedes full and free discovery of the truth, the attorney-client privilege is strictly construed."

9    *Id.* (citation omitted). While the Court will not allow questions that intrude upon the attorney-

10   client privilege, whether a question does so depends upon its context and must be determined at

11   the time of trial. This motion is DENIED without prejudice.

12       **5.**    *Motion in Limine 5: Exclude all testimony from lay witnesses who use legal terms of art.*

13       The Estate next moves to exclude lay witnesses "such as Lee Cohen, Ronald Bone, and

14   Timothy Batanian" who have "no specific legal expertise or medical expertise" from opining on

15   whether Michael was susceptible to "undue influence" or was a "vulnerable adult." Dkt. 234 at 9.

16   The Estate argues that lay witness opinion testimony "must be limited to that not based on

17   scientific, technical, or other specialized knowledge." *Id.* (citing Fed. R. Evid. 701(c)).

18       Loren argues that he has "never suggested that he will call these witnesses to provide

19   medical and legal opinion" and the Estate "seeks a blanket ruling on this issue but (again)

20   provides only two examples." Dkt. 257 at 4. Loren contends that each of the witnesses should be

21   allowed to testify to their personal observations of Michael and "may use the terms colloquially

22   if necessary." *Id.* at 5. The Court agrees that these witnesses may testify as to their personal

23   observations at trial, and the use of particular words does not necessarily transform their

24

testimony into impermissible expert opinion. Any danger of unfair prejudice from the use of

certain terms is also lessened in a bench trial, where the Court can disregard testimony that strays

beyond personal knowledge. The Court will consider objections as they arise at trial. This motion

is DENIED without prejudice.

> **6.** *Motion in Limine 6: Exclude all evidence pertaining to how Amara and Michael met.*

The Estate asks the Court to prohibit any questioning on the circumstances under which

Michael and Amara met. Dkt. 234 at 10. The Estate argues that this subject is irrelevant under

Fed. R. Evid. 402 and that any testimony about it should be excluded as hearsay. *Id.*

Loren responds that evidence of how Michael and Amara met may be relevant to the

claims and defenses in the lawsuit. Dkt. 257 at 5. Specifically, Loren argues that "Loren may

need to introduce this information to provide context for the investigation Mr. Bone conducted

around the time that Mike allegedly sent emails disavowing the agreement between Loren and

him, to explain why certain parties have animosity between each other, and to describe the

timing and the background for Mike and Loren's 2014 agreement." *Id.* Loren states that he will

not use the information to "sully Amara's reputation" and that there are no Rule 404(b) concerns

because Loren does not have claims against Amara for damages. *Id.*

"Under Federal Rules of Evidence 401 and 402, relevant admissible evidence includes

evidence having 'any tendency to make a fact more or less probable' so long as 'the fact is of

consequence in determining the action.'" *Tan Lam v. City of Los Banos*, 976 F.3d 986, 1006 (9th

Cir. 2020); *see United States v. Thompson*, 82 F.3d 849, 856 (9th Cir. 1996) (concluding that

evidence that was "not probative of any element of the [plaintiff's] case" is irrelevant).

Particularly given Amara's position that the timing of her relationship with Mike is relevant to

her claims against Loren, the Court cannot determine that there is no permissible purpose for the

testimony the Estate seeks to exclude. Again, any danger of unfair prejudice is mitigated by the Court's ability to set aside irrelevant testimony. This motion is DENIED.

> **7.** *Motion in Limine 7: Exclude all evidence that the Company was worth less than $33,620,000, the value that Loren and Michael agreed to in the 2014 Transfer Agreement.*

The Estate moves to prohibit Loren from offering any evidence that rebuts the Company's value of $22,620,000 listed in the 2014 Agreement. Dkt. 234 at 10. The Estate argues that this value is a binding term in the 2014 Agreement that Loren agreed was "true and made a part of the terms of this Agreement." *Id.*

Loren argues that the "Court should not limit Loren from introducing any evidence that the Company was worth less than the value that Loren and Michael agreed to in the 2014 Transfer Agreement." Dkt. 257 at 6. Loren asserts that to the extent the Estate believes Loren's testimony contradicts the 2014 Agreement, the Estate can use the Agreement to impeach Loren. *Id.* But Loren argues, "that goes to the weight of the evidence, not admissibility" and the "Court should be able to hear all evidence on valuation and then weigh it at the end of trial." *Id.*

The Court agrees with Loren that the Estate's arguments go to weight rather than admissibility. This motion is DENIED.

> **8.** *Motion in Limine 8: Exclude all evidence offered by Loren that conflicts with representations that Michael and Loren made to state court regarding the value of the Company and Michael's other assets.*

The Estate requests that the Court prohibit Loren from offering evidence that conflicts with representations that Loren and Michael made in state court in unrelated proceedings about the value of the Company. Dkt. 234 at 11. Specifically, the Estate notes that Loren had filed, "Cohen Parties' Opposition to Plaintiffs' Motion to Appoint Receiver" in the *Thomsen* litigation. *Id.* The Estate asserts that the Opposition stated that Point Ruston LLC, the Point Ruston Building 7 LLC, and the PR Main Retail LLC had "an aggregate net worth exceeding $50

million." *Id.* The Estate further notes that the Opposition document was not produced in response to its discovery requests, but it is highly relevant as it discusses the value of the Company. *Id.*

Loren disputes that he and Michael ever represented to the state court that Point Ruston LLC, the Point Ruston Building 7 LLC, and the PR Main Retail LLC had an aggregate net worth exceeding $50 million. Dkt. 257. Loren contends that a lawyer's argument in a brief is not evidence and that it should not preclude him from introducing other evidence disputing the Company's value. *Id.* at 7. The Court agrees with Loren that while representations made in other litigation might be relevant to the Company's value—subject to the Rules of Evidence and the admissibility of those representations—they do not preclude him from offering other evidence. This motion is DENIED.

**9.** *Motion in Limine 9: Exclude all evidence that valuation expert Arik Van Zandt failed to consider evidence Loren did not produce in discovery.*

The Estate requests that the Court prohibit Loren from attacking Van Zandt's expert testimony for not considering evidence that Loren did not produce during discovery. Dkt. 234 at 11. The Estate asserts that Van Zandt's testimony was limited to certain valuation methodologies because Van Zandt was not provided with "all financial statements, balance sheets, profit and loss statements, income statements, with an effective date from June 1, 2014 to December 6, 2020 for the Company and the related affiliated entities" that were requested during discovery. *Id.* The Estate further asks that the Court exclude Kimberly Linebarger's expert opinion that Van Zandt's expert report is unreliable because he did not consider evidence that Loren refused to produce. *Id.*

Loren argues that the Estate "seeks what is effectively a discovery sanction without showing that she issued relevant discovery, let alone that Loren violated a discovery order." Dkt. 257 at 7. Loren contends that the Estate never served Loren with requests related to

valuation, and that the Estate is "basing [its] argument on Loren's responses to *Newcomer's* discovery requests." *Id.* Loren further argues that the Estate's request as to Kimberly Linebarger "is an untimely *Daubert* motion disguised as a motion in limine" and that the Estate "could have asked Ms. Linebarger for all the documents . . . relied on in forming her opinions in this case" but failed to do so. *Id.* at 8.

The Court agrees that the motion as to Ms. Linebarger is an untimely *Daubert* motion and therefore DENIES the motion. As to Mr. Van Zandt, he may testify as to documents he sought to inform his opinions but did not receive, and the Estate can cross-examine Loren as to his possession of those documents and whether they were produced in the litigation. This evidence may go to the weight of Mr. Van Zandt's opinions and Loren's criticisms of them, but the Court will not exclude that criticism. This motion is DENIED.

> ### *10.    Motion in Limine 10: Exclude all evidence that supports Loren's creditor claims that are time barred.*

The Court has already ruled on Loren's creditor claims in its order on the Estate's motion for partial summary judgment. Dkt. 240.

> ### *11.    Motion in Limine 11: Exclude all testimony from expert Susan Gary on whether Vaugh breached her fiduciary duty.*

The Estate moves to prohibit Susan Gary from testifying on whether Vaughn breached her fiduciary duty. Dkt. 234 at 13. The Estate argues that while Gary may be generally knowledgeable on trusts and estates, she is not a licensed attorney in Washington state and thus cannot be an expert in Washington probate law. *Id.* Loren responds that he does not plan to call Gary to testify based on the Court's summary judgment order dismissing Loren's breach of fiduciary duty claim against Vaughn. Dkt. 257 at 8. However, if the Estate calls Wendy Goffe to opine on standards of fiduciary duty, Loren reserves the right to call Gary as an expert. *Id.* But if the Court does not allow testimony regarding fiduciary issues, Loren argues that this motion in

limine is now moot. The Court agrees that this motion is mooted by its rulings on summary judgment and therefore DENIES the motion.

> **12.** *Motion in Limine 12: Exclude all testimony from experts that constitutes legal conclusions.*

The Estate next moves to exclude expert witnesses from testifying about legal conclusions. Dkt. 234 at 14. The Estate argues that while "the Court can easily discern the distinction between expert testimony permissible under Fed. R. Evid. 702 and inadmissible legal conclusions . . . in the case of Loren Cohen's expert Mr. Bucknell, legal opinions comprise the entirety of his reports." *Id.* The Estate further argues that "Bucknell has no qualifications as a business valuation expert" and should not be permitted to offer legal arguments under the guise of expert testimony." *Id.* Lastly, the Estate maintains that if Bucknell's opinions are not excluded, they should still not be considered as evidence relating to valuation but instead as supplemental briefing. *Id.*

Loren argues that the request to limit or exclude Bucknell's testimony is not a proper motion in limine but instead an untimely *Daubert* motion. Dkt. 257 at 9. Loren further argues that the Estate's criticisms of Bucknell are unfounded and the Estate "does not indicate what qualifications he purportedly lacks [or] why he should be precluded from testifying on the business valuation." *Id.* To the extent that the Court believes Bucknell is providing a legal opinion, Loren asserts that the Court "can disregard that testimony focus on evidence relating to the value of the assets at issue." *Id.*

The Court agrees with Loren. Under "LCR 16(b)(4), motions to exclude expert testimony must be filed by the dispositive motion deadline." *Pacheco v. United States*, No. C15-1175RSL, 2020 WL 3050143, at *1 (W.D. Wash. June 8, 2020). The Estate did not move to exclude Mr. Bucknell's testimony by the deadline, and for this reason, the motion is DENIED. As the

Court has expressed throughout this litigation, it will disregard expert testimony on behalf of any party that impermissibly opines on questions of law.

> **13.** *Motion in Limine 13: Exclude any evidence that a person was or was not insured against liability.*

The Estate requests that the Court "exclude evidence that a person was or was not insured against liability." Dkt. 234 at 14. Loren does not dispute this exclusion but asserts that the Court "may admit the evidence for another purpose such as proving a witnesses' bias or prejudice or proving agency, ownership, or control." Dkt. 257 at 9 (quoting Fed. R. Evid. 411). The motion is GRANTED, subject to a party making an offer of proof that such evidence is admissible for an allowable purpose.

## C.    Loren's Motions in Limine

> **1.** *Motion in Limine 1: Exclude all testimony, evidence, argument, or references that Michael and Amara had a committed intimate relationship ("CIR") prior to 2016.*

Loren first requests that the Court "prohibit the parties from making any references or arguments, introducing evidence, or eliciting testimony regarding the existence of a CIR prior to 2016." Dkt. 232 at 2. Loren argues that there is evidence contradicting Amara's assertion that she and Michael began a CIR in January 2012. *Id.* Loren further contends that Amara did not file a suit to establish a CIR within the three-year statute of limitations as provided under RCW 4.16.080(3). *Id.* (citing *In re Kelly & Moesslang*, 170 Wn. App. 722, 737, 287 P.3d 12 (2012)).

In response, Amara argues that Loren's motion in limine should be denied for four reasons. First, Amara contends that "evidence of the CIR is directly relevant to characterizing property that was transferred in the 2020 agreements." Dkt. 259 at 3. Since the Washington Supreme Court recognizes property acquired during a CIR as being owned by both parties, Amara argues that evidence of their CIR is "crucial to evaluating the propriety of Loren's actions during the 2020 transactions[.]" *Id.* at 4. Second, Amara maintains that there is substantial

evidence supporting a CIR prior to 2016. *Id.* Amara asserts that she continuously cohabitated with Michael from January 2012 until his death, pooled financial resources, had two children together (born in 2010 and 2014), and co-parented their children. *Id.* Amara argues that the evidence of their CIR is "directly relevant to [her] claims against Loren for breach of fiduciary duty." *Id.* Third, Amara contends that her marriage with Michael does not render evidence of their CIR irrelevant because the "characterization of property acquired during the CIR remains important for determining which assets were subject to Michael's disposition and what rights Amara had in the property." *Id.* Finally, Amara argues that the three-year statute of limitations under RCW 4.16.080(3) applies only to property distribution between CIR partners and not to the question of whether a CIR existed. *Id.* at 5. Amara assert that "where the parties married each other after being in a [CIR], the statute of limitations for a CIR is inapplicable to determining property rights following the death of one spouse." *Id.*

The Court agrees with Amara that the statute of limitations for property distribution actions based on a CIR is not relevant here. Nor can the Court determine at this point whether the alleged existence of a CIR before 2016 is material to the claims at issue. The Court will not preclude either party from presenting evidence on this topic and the motion is therefore DENIED.

**2.**    *Motion in Limine 2: Exclude all argument that Amara is entitled to damages because she was in a committed intimate relationship with Michael.*

Loren next moves to "prevent Amara or other parties from arguing that she is entitled to damages as a result" of the CIR. Dkt. 232 at 3. Loren asserts that Michael was Amara's "sole source of support" and "[t]o the extent Amara had an interest in Mike's business, she was already fairly compensated." *Id.*

Amara argues that whether Michael was Amara's "sole source of support" and that she has been "fairly compensated" are disputed factual assertions and not legal arguments that justify exclusion. Dkt. 259 at 6. Amara contends that her financial relationship with Michael is relevant to this action because the existence of their CIR is part of her and Susan's negligence and breach of fiduciary duty claims against Loren. *Id.*

As with the prior motion, Amara's arguments are conceivably relevant to her claims, and the Court will not exclude them at this point. The Court will consider objections as they arise at trial. This motion is DENIED.

**3.**    *Motions in Limine 3: Exclude all argument from Amara that Loren is responsible for Michael's wrongdoing.*

Loren next asks the Court to "prohibit Amara from arguing that Loren is somehow liable for Mike's wrongdoing." Dkt. 232 at 3. Loren argues that if Amara objected to Michael's actions regarding the 2020 Transaction, she should have filed a creditor claim with the Estate by December 6, 2022. *Id.* But since she did not file a claim, Loren argues that her claim against Michael is "forever barred." *Id.*

Amara responds that Loren's motion in limine should be denied because it mischaracterizes her claims. Dkt. 259 at 6. Amara argues that she is not seeking to hold Loren responsible for Michael's actions but is rather asserting that Loren's own conduct harmed Amara and her children. *Id.* Specifically, Amara maintains that Loren breached his fiduciary duties to her, and the trust, based on several factual allegations contained in her complaint. *Id.*

The Estate also argues that this motion should be denied because if the "2020 Transaction is found to be voidable under the UVTA . . . whether Loren knew about and participated in the efforts to delay, defraud, and hinder creditors is directly relevant to his defense that he is immune from transferee liability because he acted in good faith." Dkt. 261 at 2. Additionally, the Estate

argues that Loren's participation in the 2020 Transaction relates to whether Loren had "unclean hands" that precludes equitable defenses. *Id.*

The Court agrees with Amara that this motion mischaracterizes her claims. This motion is DENIED.

**4.** *Motion in Limine 4: Exclude all evidence that suggests the 2014 Transfer Agreement was Michael's attempt to hide money and that Michael intended to transfer the money back.*

Loren moves to "prohibit parties from making any references or arguments, introducing evidence, or eliciting testimony that suggests that the 2014 Agreement was Mike's attempt to hide money and that he intended to someday transfer the company back to himself." Dkt. 232 at 4. Loren argues that Amara alleged for the first time in her deposition that Michael had planned to have Loren transfer back the initial 50.1 percent interest to him. *Id.* Loren contends that allowing "Amara or anyone else to testify about this allegation would be prejudicial because it would waste time, confuse the issues, and mislead the factfinder." *Id.* And even if the evidence is relevant, Loren argues that its probative value would be substantially outweighed by its unfair prejudice. *Id.*

In response, Amara argues that evidence of "Michael's attempt to hide his money and return the company to himself" is "directly relevant to understanding the relationship between Michael and Loren, the purpose of the 2014 Agreement, and the context of the 2020 Agreement that are central to this litigation." Dkt. 259 at 7. Specifically, Amara asserts that her testimony that Michael told her "he was going to have Loren transfer it back when things are more settled," is admissible as a statement of Michael's state of mind under Fed. R. Evid. 803(3). *Id.* Amara also maintains that evidence pertaining to Michael's intent in the 2014 Transaction "provides important context for evaluating the 2020 Agreements" about whether Michael truly intended to permanently transfer the remaining assets to Loren. *Id.* Lastly, Amara argues that that the fact

that Michael retained a 49.9 percent interest and substantial control of the Company after the 2014 Transaction as well as that the 2020 codicil to Michael's will gifted the Preferred Return to the trust shows "Michael's continued belief that he retained valuable interests in the business." *Id.* at 8.

The Estate argues that Loren cites to no authority to show that Amara cannot testify to this subject apart from concluding that it is unfairly prejudicial. Dkt. 261 at 3. The Estate maintains that Amara's testimony is relevant because it supports the UVTA claims against Loren and Michael. *Id.*

Without greater context, the Court cannot determine that this testimony is inadmissible in all respects. The Court will consider objections to this line of testimony as they arise at trial. This motion is DENIED without prejudice.

**5.**      *Motion in Limine 5: Exclude any testimony from Susan, Amara, and Loren about their interactions with Michael regarding the 2020 Transactions.*

Loren moves to prohibit Susan, Amara, and himself from testifying about their interactions with Michael regarding the 2020 Transactions because all three have an interest in the Court's decision under the Deadman Statute. Dkt. 232 at 5. Loren argues, however, that Lee's testimony should not be excluded because "his rights will not be altered" and "he will not benefit or be harmed by the Court's judgment." *Id.* Loren further asserts that "[o]nly the Estate may waive the protections of the Deadman's Statute if it fails to object, conducts cross examination beyond the scope of direct examination, or introduces testimony favorable to the estate about transactions or communications with the [decedent]." *Id.*

Loren next argues that Michael's absence raises hearsay issues. *Id.* Specifically, Loren contends that "Loren and PCC are the only parties who will be able to introduce [Michael's] statements at trial because Vaughn, who stands in [Michael's] shoes as PR, is Loren's and PCC's

party opponent." *Id.* (citing *Lujan v. Quinata*, 2016 Guam 39, ¶ 24 (Guam Dec. 30, 2016)). Finally, Loren argues that "Vaughn, Susan, and Amara may not introduce statements by Mike, including the contents of emails, to prove the truth of the statements" and the "prohibition extends to statements made by Mike's agents and employees" under Fed. R. Evid. 801(d)(2)(D).

Amara responds that Loren's "attempt to broadly exclude statements allegedly made by Michael Cohen misapplies the Washington Deadman's Statute and should be rejected." Dkt. 259 at 8. First, Amara argues that the Deadman's Statute does not bar all testimony regarding statements made by the decedent, but instead precludes only "interested parties from testifying about transactions or communications with the deceased when the testimony relates to claims" where "there is an 'adverse party' to the decedent—in other words, where there is a lawsuit by or against the decedent's estate." *Id.* Amara contends that here, "much of Susan and Amara's testimony about Michael's statements will be relevant to their claims against Loren Cohen for his breach of fiduciary duty and negligence" and since "these are not claims where there is an adverse party under the Deadman's Statute," they should not be excluded. *Id.* (citing *Erickson*, 125 Wn. 2d at 189–90).

Second, Amara argues that the Deadman's Statute does not apply to Susan's testimony because Susan is not an interested party. *Id.* at 9. Amara contends that Susan does not "stand to gain or lose in the action in question" given that she is not a named beneficiary in Michael's will or a beneficiary of the spousal trust. *Id.*

Third, Amara argues that "the Deadman's Statute does not bar testimony about documents executed by the deceased." *Id.* Though they may not testify about the meaning of the document, Amara argues that she and Susan may testify about how they received the document and identify signatures on the document. *Id.* (citing *Wildman v. Taylor*, 46 Wn. App. 546, 553, 731 P.2d 541 (1987)).

In its response, the Estate argues that the motion should be denied because it is overly broad and premature. Dkt. 261 at 3. The Estate agrees that the Deadman Statute applies only to testimony by individuals with a direct pecuniary interest—Amara and Loren. *Id*. The Estate also argues that waiver of the Deadman Statute is determined by each transaction and "the Estate retains the right to waive the Deadman[] Statute as evidence is offered by Defendants." *Id.* With respect to Loren's hearsay argument, the Estate responds that "Loren's interpretation of the hearsay rules is overbroad, self-serving, and premature." *Id.* at 4. The Estate contends that "[t]here is no precedential authority from any controlling jurisdiction" to support Loren's conclusion that "only he and PC Collection can introduce hearsay statements of Michael Cohen." *Id.* The Estate further maintains that "Loren's argument that this extends to all of Michael's employees and agents is likewise not supported by precedent" since the "hearsay rule has many exceptions which may apply, not all out of court statements are hearsay, and not all hearsay is offered for the truth of the matter asserted." *Id.*

The Court agrees that Susan is not an interested party because she does not have a pecuniary interest in the outcome of this case. *See In re Est. of Miller*, 134 Wn. App. at 889; *see also Erickson*, 125 Wn.2d at 189 ("Testimony by third parties is not excluded under the statute; only 'part[ies] in interest' are precluded from testifying on their own behalf."). Therefore, Susan is not barred from testifying about her interactions with Michael regarding the 2020 Transactions.

Similarly, Susan and Amara are allowed to testify about their interactions with Michael about the 2020 Transactions because the "[Deadman] statute is inapplicable to the action brought by the [plaintiffs] in their individual capacities." *Erickson*, 125 Wn.2d at 189–90. Here, Susan and Amara are bringing claims of negligent misrepresentation and breach of fiduciary duty against Loren independent of the Estate. *See* Dkt. 114. To the extent that Susan and Amara seek

to provide testimony in support of these claims, they are not barred by the Deadman Statute from doing so. *See Maciejczak v. Bartell*, 187 Wash. 113, 60 P.2d 31 (1936) (Deadman Statute only applies to actions brought on behalf of the estate).

As explained earlier, and discussed at the pretrial conference, the Court otherwise defers ruling on (1) the exclusion of evidence based on the Deadman Statute and (2) the applicability of the hearsay rules to written statements by Michael Cohen, and will consider objections as they are raised at trial.

**6.** *Motion in Limine 6: Exclude Susan's notes.*

Loren moves to exclude notes that Susan alleges she took in 2020 because they impermissibly contain her own interpretations and reflections. Dkt. 232 at 6. Loren argues that to the extent the notes discuss transactions between her and Mike, they are prohibited under the Deadman Statute and hearsay rules. *Id.* at 6–7.

Amara responds that Susan's notes should not be excluded because they are admissible under several exceptions to the hearsay rule. Dkt. 259 at 9. For example, Amara argues that the notes qualify as present sense impressions under Fed. R. Evid. 803(1). Amara also argues that that are admissible as a recorded recollection under Fed. R. Evid. 803(5) since the "notes were about something Susan had personal knowledge of, made when the matter was fresh in Susan's memory[,] and accurately reflect her knowledge." *Id.* at 10. Amara further notes that "Susan's notes contain Michael's statements about his intent, plans or state of mind regarding the business transactions and agreements," and are "separately admissible under FRE 803(3) as statements of Michael's then-existing state of mind." *Id.* Lastly, Amara maintains that the Deadman Statute does not bar the notes because they are not testimony about a specific transaction, but rather documentary evidence. *Id.*

1    In its response, the Estate agrees with Amara's objections to the motion. Dkt. 261 at 4.

2    The Estate asserts that "Susan has not testified that the notes contain interpretations and analyses

3    of her conversations with Michael[,]" but rather "these are notes that she took when she 'was

4    talking to Michael and throughout the several different times in 2020.'" *Id.* The Estate argues

5    that Susan's testimony suggests that the notes were taken while her memory was fresh and are

6    admissible as a present sense impression. *Id.* The Estate adds that the Deadman Statute does not

7    bar Susan's notes because Susan is not an interested party since she does not have a personal

8    financial stake in the outcome of the case. *Id.*

9    Federal Rule of Evidence 803(1) provides an exception to rule against hearsay for a

10   "statement describing or explaining an event or condition, made while or immediately after the

11   declarant perceived it." Fed. R. Evid. 803(1). Federal Rule of Evidence 803(3) provides another

12   exception for a "statement of the declarant's then-existing state of mind (such as motive, intent,

13   or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily

14   health)." Fed. R. Evid. 803(3). The parties did not submit a copy of the notes with their motions.

15   Without reviewing the notes themselves, the Court cannot determine that they are inadmissible in

16   all respects. It is possible that the requirements of a hearsay exception can be established by

17   foundational testimony. Furthermore, as documentary evidence, the notes are not barred by the

18   Deadman's Statute. *See Kellar*, 172 Wn. App. at 575. Accordingly, this motion is DENIED.

19   **7.**    *Motion in Limine 7: Exclude Amara's log.*

20   Loren also moves to exclude Amara's log that Amara referenced during a deposition.

21   Dkt. 232. Loren notes that parties met and conferred on March 17, 2025 and "understands that

22   Amara does not have a log to produce, and no log will be introduced at trial." *Id.* This motion is

23   DENIED as moot.

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

        **8.**      *Motion in Limine 8: Exclude all references to the Tempe investment.*

        Loren moves to "prohibit the parties from making any references or arguments,

introducing evidence, or eliciting testimony about Tempe" because it "is irrelevant, prejudicial,

and time-wasting." *Id.* Loren asserts that Michael never had any financial interest in South Pier

Tempe Holdings, LLC, and "all entities involved in developing Tempe were in Loren's name."

*Id.* Loren contends that no deposed witness testified that they had seen evidence that Michael had

an interest in Tempe. *Id.* at 8. For example, Loren asserts that during her deposition, Susan stated

she "never saw anything" to support the claim that Point Ruston had loaned money to Tempe. *Id.*

at 7. Loren also argues that Lee and Scherbinske testified that Michael did not have an interest in

Tempe. *Id.* Therefore, Loren concludes that the Court should exclude "any speculative evidence

that Tempe is relevant to the claims and defenses in the case." *Id.* at 8.

        The Estate argues that testimony regarding the Tempe investment supports the UVTA

claim and should not be excluded. Dkt. 261 at 5. The Estate points to Michael's Unopposed

Motion for Determination that Stipulated Judgment is Fair and Reasonable from the *Thomsen*

litigation, *see* Dkt. 125-12 at 8, to show that the Thomsens "alleged that Michael had improperly

used assets of the Point Ruston LLC to make a large loan to the Tempe South Pier Tempe

Holdings LLC[.]" Dkt. 261 at 5. The Estate asserts that "[d]ocuments from the Thomsen Lawsuit

show that Michael personally guaranteed and used Point Ruston LLC to secure a loan of $8.16

million from a company owned by James Weymouth to Tempe owned by Loren." *Id.* at 5–6.

Weymouth is one of the individuals whom Loren alleges he paid following Michael's death to

indemnify Michael, and the Estate argues that documentary evidence shows that "Michael's debt

to Weymouth was from a loan that Weymouth made to Tempe." *Id.* at 6. The Estate contends

that the evidence rebuts Loren's claim that he indemnified Michael by paying his debts to

Weymouth and relates directly to the valuation of Point Ruston. *Id.*

The Court cautions the parties that mere allegations in the *Thomsen* litigation have very little if any probative value, and the Court is likely to exclude evidence or testimony that is based on mere allegations. But because the record is unclear as to what evidence the Estate intends to rely on with respect to the Tempe investment, the Court cannot yet determine that all evidence on that topic is inadmissible. This motion is therefore DENIED without prejudice.

**9.** *Motion in Limine 9: Exclude all testimony, evidence, argument, or references that Michael's signature was forged.*

Loren next asks the Court to "prohibit the parties from making any references or arguments, introducing evidence, or eliciting testimony suggesting that Mike's signature on the 2020 agreement was forged." Dkt. 232 at 8. Loren argues that any testimony about forgery is mere speculation given that "nobody has produced any admissible evidence or experts to support the contention." *Id.*

The Estate argues that "lay persons are allowed to testify about the genuineness of handwriting if there is proper foundation" under Fed. R. Evid. 901(b)(2). Dkt. 261 at 6. The Estate maintains that Susan and Amara are qualified to testify on Michael's signature based on their familiarity with his signature, assuming proper foundation is laid. *Id.* The Estate asserts that it is not claiming Michael's signature was forged, but the "manner by which the documents were signed, and whether Loren signed for Michael, are relevant to the claims of undue influence and breach of fiduciary duty." *Id.* at 7.

The Court agrees that, under certain circumstances, lay witnesses may testify to familiarity with handwriting, and Loren has not shown that this testimony is inadmissible on all grounds. Loren's arguments that Susan and Amara are unfamiliar with Mike's electronic signature go to weight rather than admissibility. The Court will consider objections as they arise at trial, and this motion is DENIED without prejudice.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

**10.** *Motion in Limine 10: Exclude all testimony, evidence, argument, or references pertaining to Loren's actions as PR of Michael's Estate.*

Loren moves to "prohibit parties from making any references or arguments, introducing evidence, or eliciting testimony about Loren's actions as the former PR of the Estate of Michael Cohen." Dkt. 232 at 8. Loren argues that "[t]here are no claims against Loren for his actions as PR and his actions are not relevant to any claims or defenses in the litigation." *Id.* Loren concludes that allowing this evidence risks "prejudicing Loren, confusing the factfinder, and wasting time." *Id.*

The Estate argues that "Loren's actions as PR are directly relevant to the UVTA claim and his credibility." Dkt. 261 at 7. For example, the Estate asserts that while Loren was PR (1) he did not disclose that the Estate was insolvent; (2) he never filed a notice of insolvency; (3) he paid Lee under a "bonus agreement" even though Lee was an insider under the UVTA; and (4) he refused to give Newcomer a copy of the Estate inventory until he was compelled by the court to do so. *Id.* The Estate argues that these actions are relevant under the UVTA as they show "concealment of transfer, insolvency, [and] transfer to an insider" and "there is no possibility it will confuse the Court." *Id.* at 8.

The Court agrees that at least some of Loren's actions as PR may be relevant to the UVTA claims. This motion is DENIED without prejudice and the Court will consider objections to specific evidence as they arise at trial.

**11.** *Motion in Limine 11: Exclude all testimony, evidence, argument, or references pertaining to Loren's removal as PR of Michael's Estate and the appointment of successor PR.*

Loren also moves to "limit the parties from making any references or arguments, introducing evidence, or eliciting testimony about the details regarding Loren's removal as PR or the appointment of Carol Vaughn as successor PR." Dkt. 232 at 7. Loren argues that the only

relevant facts for the claims and defenses in this case are "(1) Loren was removed as PR; (2) the probate court found that Loren did not do anything wrong . . . ; and (3) Vaughn was appointed as the successor PR." *Id.* at 8–9. Loren contends that any potential minimal relevance of his removal as PR and Vaughn's appointment as successor PR is outweighed by the confusion of issues and unfair prejudice. *Id.* at 9. Loren adds that "[t]his includes any facts or argument about Loren's decision not to disclose PCC's foreclosure of real property at the hearing." *Id.*

The Estate responds that "Loren was removed from his role as PR due to his conflict of interest; the court did not simply find in a vacuum that 'Loren did not do anything wrong.'" Dkt. 261 at 8. The Estate argues that Loren's removal is relevant because he argued that Lee should be appointed, and then appealed the trial court's decision rejecting Lee as a successor PR. *Id.* The Estate asserts that Loren's failure to inform the courts about Lee's bonus agreement or other payments to Lee, while asking the court to appoint Lee as PR are relevant to the concealment element of the UVTA claim. *Id.*

As with the previous motion, it is conceivable that some facts surrounding Loren's removal as PR are relevant to the UVTA claims. This motion is DENIED without prejudice.

### 12.    *Motion in Limine 12: Exclude all testimony, evidence, argument, or references to the sale of Paradise Village property.*

Loren requests that the Court "limit the parties from making any references or arguments, introducing evidence, or eliciting testimony about the Paradise Village property." Dkt. 232 at 9. Loren argues that the property is not relevant to this case because Michael did not have an interest in this property. *Id.* Loren asserts that though he and Holland "were the only ones who had an interest in the property through a Mexican trust and LLC . . . Loren no longer has any interest in the property." *Id.* Loren further states that "[a]lthough the property was included in the MOU Regarding the Mexico Properties, neither Mike, the Estate, nor Amara had any ownership

interest in the property." *Id.* Loren concludes that "the only purpose for introducing it at trial would be an attempt to sully Loren's reputation and it would waste limited trial time, and result in the introduction of irrelevant and prejudicial evidence." *Id.*

In response, the Estate contends that Loren is improperly asking the Court to rule as a part of a motion on limine that Michael did not have an interest in the property. Dkt. 261 at 8. The Estate asserts that "the [MOU] regarding Mexico expressly gives Michael's wife and children an interest in Michael's property in Mexico" and "Paradise Village No. 4 is expressly included as part of the Mexico Property in the Mexico MOU." *Id.* (internal quotations omitted). The Estate further asserts that the Mexico MOU contains a "true-up accounting" provision which would be "conducted in order to equalize the distribution of the Mexico Property equally between the Cohen side and Foster side." *Id.* at 8–9. Given that Loren and Holland's LLC sold Paradise Village without complying with the MOU, the Estate argues that this evidence is relevant for the breach of fiduciary claims. *Id.* at 9.

The Court agrees with the Estate that this motion is essentially an untimely partial summary judgment motion based on Loren's self-serving testimony, and evidence surrounding Paradise Village is at least conceivably relevant to the breach of fiduciary duty claims. This motion is DENIED.

> **13.** *Motion in Limine 13: Exclude all testimony, evidence, argument, or references of Peoples Bank's seizure of the boat.*

Loren asks the Court to "limit the parties from making any references or arguments, introducing evidence, or eliciting testimony about the boat that was seized by Peoples Bank." Dkt. 232 at 9. Loren argues that the seizure of the boat is irrelevant to any claim or defense in this case even though questions related to it were raised in probate court. *Id.*

The Estate argues that "[i]information about the yacht seizure is relevant to the UVTA claim." Dkt. 261 at 9. The Estate asserts that it is asking for judgment under RCW 19.40.081, which provides that "judgment may be recovered 'for the value of the asset transferred . . . or the amount necessary to satisfy the creditor's claim, whichever is less.'" *Id.* The Estate asserts that People's Bank filed a creditor claim that was not fully satisfied by the seizure of the boat, and "Loren had attempted to sell the vessel despite the security interest, resulting in the maritime action and seizure." *Id.* The Estate argues that "Loren's actions in attempting to sell the boat that he knew had a mortgage lien reflect the ongoing attempt to interfere with payment of a creditor" and this motion should be denied. *Id.*

The Court cannot determine without greater foundation and context that evidence regarding the boat seizure is inadmissible in all respects. This motion is therefore DENIED.

**14.**     *Motion in Limine 14: Exclude allegations in other lawsuits.*

Loren request that the Court "restrict the parties from referring to or admitting the pleading documents from other lawsuits or litigation involving Loren and the companies that he has an interest in" because these "pleadings are hearsay and irrelevant and more prejudicial than probative." Dkt. 232 at 10. Loren asserts that he is concerned that the Estate will try to introduce the pleadings from the *Thomsen* litigation as fact. *Id.* Loren agrees, however, that "the existence of the lawsuit, its settlement, and Loren's compliance with the settlement, are relevant to the UVTA and the question of whether Loren provided 'reasonably equivalent value.'" *Id.* Nevertheless, Loren contends that the Estate and other parties should be prohibited from arguing that the settlement left the Estate responsible for an $8 million judgment or any other liability because it undisputed that under the settlement agreement the stipulated judgment could be recovered only from the insurance company. *Id.* at 10–11. But Loren argues that "the *existence*

1    of other lawsuits against [Michael] and related business interests are relevant to show risk and

2    provide context to the 2020 Agreements at the time they were entered[.]" *Id.* at 11.

3        The Estate argues that the motion should be denied because allegations from other

4    lawsuits are directly relevant to the UVTA claim and the issue of valuation. Dkt. 261 at 10. The

5    Estate argues that in the *Thomsen* litigation, Loren represented that in January 2021, the "net

6    worth of Point Ruston LLC and two related entities exceeded $50,000,000." *Id.* The Estate

7    asserts that Loren's expert disputed the contention that Point Ruston LLC had a negative value.

8    *Id.* The Estate argues that this information is relevant in deciding Loren's credibility in this

9    lawsuit. *Id.* The Estate also maintains that Loren's prior representation of Point Ruston's net

10   value as exceeding $50 million is relevant because (1) "it shows that when Michael and Loren

11   agreed to transfer Michael's 49.9% interest in the Company . . . it was an intentional act to avoid

12   creditors"; (2) it "precludes Loren's good faith defense to actual fraud" because "Loren was well

13   aware that the Company was valuable"; and (3) it "undercuts the credibility of Loren's current

14   valuation." *Id.* at 11.

15       As discussed above, while the Court agrees with Loren that mere allegations in other

16   litigation are hearsay and unlikely to have any substantive probative value, the existence of the

17   allegations may be admissible for a limited purpose (as Loren recognizes). These objections are

18   better handled in the context of specific testimony or documentary evidence at trial. This motion

19   is therefore DENIED without prejudice.

        **15.**    *Motion in Limine 15: Exclude all testimony, evidence, argument, or references*
20              *pertaining to damages owed for Loren's alleged breach of fiduciary duty.*

21       Loren requests that the Court prohibit the Estate "from making any references or

22   arguments, introducing evidence, or eliciting testimony concerning damages owed for Loren's

23   alleged breach of fiduciary duty." Dkt. 232 at 11. Loren argues that the Estate has only alleged

24

1
2
3
4
5

consequential damages and has not provided any computation of the alleged damages as required under Fed. R. Civ. P. 26(a)(1)(A)(iii) and 26(e)(1)(A). Loren further argues that the Estate failure to properly and timely disclose the computation of damages was not substantially justified under Rule 37(c)(1). *Id.* at 11–12. Loren concludes that "if the Estate was permitted to argue for these damages trial, Loren would not have an opportunity to prepare an adequate defense." *Id.* at 12.

6
7
8
9

In response, the Estate argues that "Loren received detailed information about all of the categories of damages claimed by the Estate for his breach of fiduciary duty." Dkt. 261 at 11. The Estate cites to its Initial Disclosure Pursuant to Federal Rule of Civil Procedure 26 which provides:

10
11
12
13
14
15
16
17

1.  Consideration owed for the 50.1% of the Decedent's business interests transferred to Loren Cohen in 50.1%, estimated to be $8,485,000;

2.  Fair market value of the 49.9% of the Decedent's business interests transferred to Loren Cohen in 2020, estimated to be $8,775,564 based on Michael Cohen's 2019 valuation;

3.  Consequential damages from Loren Cohen's breach of fiduciary duty sufficient to make the Estate whole, including but not limited to interest and penalties owed on unpaid taxes, attorneys' fees, administrative expenses;

4.  Prejudgment interest.

5.  Discovery is ongoing, and Plaintiff has not completed its damages computation. The above damages are based upon information known at the time of these initial disclosures.

18
19
20
21

Dkt. 260-1 at 7. The Estate contends that its calculations were more specific than Loren's calculations, which sought "disgorgement of the amounts he paid to resolve claims that would have otherwise been directly against the Estate were it not for the agreement to indemnify the Estate in the 2020 Transaction." Dkt 260-2 at 5.

22
23
24

The Estate further argues that the PR's reports to the probate court provides regular updates on item #3 in the initial disclosures which "itemize the costs of administration and

provide attorney fee totals by month." Dkt. 261 at 12. The Estate maintains that through

February 5, 2025, Vaughn has itemized all fees and all other costs to the probate court. *See* Dkt.

260-3; Dkt. 260-4. Additionally, the Estate asserts that its answers to Interrogatories 15 and 16,

*see* Dkt. 101-1 at 12–15, "identified and quantified the harm caused by Loren's breach of

fiduciary duty." Dkt. 261 at 12. The Estate asserts that it provided Vaughn's unredacted billing

records in response to discovery requests. *Id.* at 13. Lastly, the Estate maintains that the Van

Zandt's expert report quantifies the value of the Company at the time of transfer to Loren. *Id.*

Even if the Court finds that the Estate did not comply with the initial disclosure

requirements, which it denies, the Estate argues that excluding the evidence of damages would

not be justified. *Id.* at 14. Since the "information was contained in answers to discovery, probate

reports, and expert reports, and Loren waited until the last minute to raise the alleged deficiency"

the Estate concludes that the motion should be denied. *Id.*

Federal Rule of Civil Procedure 26(e)(1)(A) provides, in relevant part:

> A party who has made a disclosure under Rule 26(a) . . . must supplement or correct
> its disclosure or response: (A) in a timely manner if the party learns that in some
> material respect the disclosure or response is incomplete or incorrect, *and if the*
> *additional or corrective information has not otherwise been made known to the*
> *other parties during the discovery process or in writing.*

Fed. R. Civ. P. 26(e)(1)(A) (emphasis added). Loren's motion omits the second portion of the

rule. The Estate has complied with Rule 26 by providing its computation of alleged damages

during the discovery process and in writing. This motion is DENIED.

> **16.**    *Motion in Limine 16: Exclude all testimony, argument, or references the Estate*
> *became insolvent because of the 2020 Transaction or that the Company had the*
> *ability to pay a Preferred Return.*

Loren next asks that the Court to prohibit the Estate "from making any unsupported

references or arguments, or eliciting testimony alleging without supporting evidence that the

Estate became insolvent because of the 2020 transaction." Dkt. 232 at 12. Loren argues that even

though the Estate contends that the Company owed a Preferred Return that would have made the Estate solvent but for the 2020 Transaction, the Estate has not disclosed evidence that the Company could make profit distributions or owned assets that could be liquidated in a sale. *Id.* Loren next asserts that the 2014 Agreement shows that the Company, not Loren, owed the Preferred Return, and the Company was governed by the LLC Act and LLC Agreement. *Id.* Since the Company was not allowed to make distributions unless it was solvent, and the Company's tax returns show that it had negative equity in 2019 and 2020, Loren argues that the 2020 Transfer could not have been the reason for the Company's insolvency. *Id.* Loren contends that if the Estate is insolvent, it became insolvent due to Newcomer's $6 million judgment against the Estate. *Id.*

The Estate argues that "Loren is attempting to set up a relevancy test that conflicts with the plain meaning of the UVTA." Dkt. 261 at 14. The Estate contends that the "UVTA plainly does not require a causal connection between the transfer and the insolvency for the insolvency to be relevant as a badge of fraud." *Id.* at 15. The Estate argues that instead, "[w]hat is relevant is whether Michael was insolvent at the time of the transfer or became insolvent shortly after the transfer." *Id.* Additionally, based on the December 31, 2019 Statement of Personal Net Worth, the Estate argues that if the 2020 Transaction had not occurred, the Estate would have been entitled to receive $7,227,083 more than the remaining Preferred Return and value of the assets Michael transferred to Loren. *Id.* But the Estate argues, "[r]egardless of whether the transfer caused Michael's insolvency, he gave away millions that would be available now to pay debts" and his "insolvency is relevant for determining actual fraud." *Id.* at 16.

Loren's motion—that the Estate should be prohibited from making "unsupported" arguments—does not seek to exclude any specific evidence, and is too broad and vague for a pretrial ruling. The Estate has identified at least some evidence (such as Michael's email to his

1    ex-wife) which tends to show that the 2020 Transaction did contribute to the Estate's insolvency.

2    Loren's objections to specific testimony or evidence will be considered at trial. This motion is

3    DENIED.

4    **17.**    *Motion in Limine 17: Exclude all arguments that the Preferred Return was*
        *miscalculated or that any remaining Preferred Return is a recoverable damage.*

5

6        Finally, Loren asks that "no party should be allowed to argue or assert that the Preferred

7    Return was miscalculated or assert that any remaining Preferred Return is a recoverable damage

8    for any theory asserted." Dkt. 232 at 13. Loren asserts that the 2014 Agreement states that the

9    Company, not Loren owed the Preferred Return. *Id.* Since "Vaughn failed to join the Company

10   as a party, sue the Company for accounting, bring a derivative action under RCW 25.15.385, or

11   sue for breach of contract or breach of the LLC Agreement or under RCW 25.15.226 asserting a

12   right to distribution[,]" no party can argue that the Preferred Return was miscalculated. *Id.* Even

13   if there was a mistake, Loren argues that he is entitled to indemnity under RCW 25.15.041 and

14   the LLC Agreement. *Id.*

15       In response, the Estate argues that Loren's motion is "an untimely dispositive motion."

16   Dkt. 261 at 16. Furthermore, the Estate contends that Loren is the proper defendant for the

17   UVTA and breach of fiduciary duty claims. *Id.* First, the Estate asserts that for the UVTA claim,

18   it is "seeking a judgment against Loren . . . for the value of the asset transferred or the amount

19   necessary to satisfy the unpaid claims against the Estate." *Id.* at 16–17. Even if the transferee of

20   the reduced consideration was the Company, the Estate maintains that Loren is the proper

21   defendant because he was "the person for whose benefit the transfer was made" and he was the

22   "immediate or mediate transferee of the first transferee" because Loren became personally

23   responsible for paying the remaining Preferred Return under the 2020 Transactions. *Id.* at 17

24   (citing RCW 19.40.081(2)(a)). Second, the Estate argues that whether "the preferred return was

owed by the Company or by Loren is immaterial to the breach of fiduciary duty claims." *Id.* The Estate maintains that under Section 801 of the Restatement of Agency (Third), "[w]hat matters for assessing the breach of fiduciary duty is whether Michael benefited from the reduction, not whether Loren benefited from it." *Id.* Finally, the Estate argues that artificial deflation of the remaining Preferred Return provides circumstantial evidence of actual and constructive fraud under the UVTA. *Id.* at 18.

This motion is essentially a partial summary judgment motion disguised as a motion in limine. This Court strictly enforces the dispositive motion deadline and will not entertain untimely dispositive motions at the motion in limine stage. Additionally, the Court previously ruled in its summary judgment orders that the calculation of the Preferred Return is relevant to the value received and given by Loren in the 2020 Transaction. This motion is DENIED.

**D.    Stipulated Motions in Limine**

> ***1.    Motion in Limine 1: Exclude non-testifying witnesses, other than parties and their experts, when relevant, from the courtroom during the testimony of other witnesses.***

The parties stipulate to this proposed exclusion. Accordingly, this motion is GRANTED.

> ***2.    Motion in Limine 2: Parties must give notice of each witness or deposition to be called or used at the end of each trial day.***

The parties stipulate to this proposed exclusion. Accordingly, this motion is GRANTED.

> ***3.    Motion in Limine 3: Eliminate any issues not preserved in pretrial order.***

The parties stipulate to this proposed exclusion. Accordingly, this motion is GRANTED.

> ***4.    Motion in Limine 4: Provide any orders on motions in limine in advance of testimony.***

The parties stipulate to this proposed exclusion. Accordingly, this motion is GRANTED.

Dated this 10th day of April, 2025.

Tiffany M. Cartwright
United States District Judge